[L. A. No. 17226. In Bank.—October 5, 1939.]

PACIFIC INDEMNITY COMPANY (a Corporation), Appellant, v. R. T. HARPER et al., Defendants; W. A. MOSES, Respondent.

Charles E. R. Fulcher for Appellant.

C. H. Hartke and Freeman R. Brant for Respondent.

THE COURT.—This appeal is from a judgment in favor of the defendant Moses, whose demurrer to the complaint was sustained without leave to amend. A purported appeal also has been taken from an order denying plaintiff's motion to file an amended complaint.

From the allegations of the complaint on file herein, it appears that some time prior to the filing of the instant action, at the instance of the defendant Moses and his employer, the West American Finance Company, the plaintiff surety com-

pany had issued a fidelity bond in a sum not to exceed $10,000, under the terms of which the surety company agreed to pay any financial loss which the employer finance company might sustain by reason of any act of larceny, embezzlement, theft, or any other fraudulent or dishonest act committed by the employee, Moses. Thereafter the finance company instituted an action against the surety company only, for damages in the full amount of the bond, by reason of financial losses the finance company alleged it had sustained on account of asserted fraudulent acts of the employee, Moses. The latter was not made a party to that action.

In the instant complaint it is further alleged that the plaintiff herein, the surety company, had prevailed in the former action, both at the trial and on the appeal (*West American Finance Co.* v. *Pacific Indemnity Co.*, 17 Cal. App. (2d) 225 [61 Pac. (2d) 963]), its demurrer to the complaint having been sustained; but that, in connection with its defense of that action, the surety company alleges it had been necessary for it to expend various sums of money for investigations, court costs, attorneys' fees, the printing of briefs, etc., which expenditures assertedly amounted to the total sum of $4,015.11. Based upon the contention of the surety that it is entitled to recover the latter sum from the principal on the bond, the instant action was brought to impose such liability.

It is not alleged in the complaint herein that the appellant surety company has ever paid the whole or any part of the principal obligation of the bond, nor that respondent Moses had ever entered into an agreement to indemnify the appellant for the expenses sought to be collected in this action, or otherwise. ■ The question presented for determination, therefore, is: If a surety is sued alone upon a contract of suretyship in an action brought by a third party, and the surety successfully defends the action so that it is not required to pay the principal sum of the bond, or any portion thereof, but the surety does expend certain moneys for attorney's fees, court costs, etc., is the surety entitled to recover from the principal—who was not a party to the former action—the disbursements so made in defending the action, where the surety has not exacted an agreement of indemnity therefor from the principal?

Both parties to this appeal agree that no appellate court decision of this state has involved the identical question here

to be determined. They concede, however, that in a situation where the facts show that a surety has, in whole or in part, satisfied the obligation of the principal, the surety is entitled to be reimbursed by the principal for necessary expenses incurred because of the contract of suretyship. But it is contended by the respondent that where, as here, the surety was not required to satisfy any part of the principal's obligation, and no contract of indemnity was entered into, the surety has no right of reimbursement for the expenses here sought to be collected, either under the provisions of section 2847, Civil Code, or under the common law. On the other hand, the appellant contends that, with regard to the subject of suretyship, statutory enactments have taken away no rights of a surety which existed at common law, and that, under the said common law there exists an implied obligation against a principal to reimburse a surety for expenditures such as are involved here. In support of his contention that at common law the only implied obligation of a principal to reimburse his surety arises when, and only when, the surety has satisfied the obligation of the bond, or some part thereof, respondent cites the case entitled *Title Guaranty & Surety Co.* v. *Burke,* 134 Ark. 499 [204 S.W. 215], which, it appears, involved a situation somewhat analogous to that here concerned. In that case the principal, Burke Bros., a firm of contractors, and the latter's surety defended on a cross-complaint which sought to establish the default of the principal under a fidelity bond. The principal and the surety were each represented by separate counsel and after judgment had been rendered in favor of both the principal and surety, the latter brought an action against the principal to collect attorneys' fees incurred by the surety in the former action. On appeal, the court upheld an instruction which had been given by the trial court to the effect that no recovery could be had by the surety unless it first showed that the principal had defaulted in the obligations of the bond. In that case it was said:

" . . . counsel for appellant cite and rely upon the case of *United States Fidelity & Guaranty Co.* v. *Hittle,* 121 Iowa, 352 [96 N. W. 782], where the court said that, in the absence of such bad faith as would operate as a fraud, the surety upon a bond had the right to employ and pay counsel to defend an action against it arising out of the bond upon which

it was surety. But in the statement of the facts in that case it appears that the application for the bond contained the recital that the principal would 'indemnify and keep indemnified' the company 'from and against all losses, costs, charges, suits, damages, counsel fees, and expenses of whatever kind or nature which said company shall or may, for any cause, at any time, sustain or incur or be put to for or by reason or in consequence of said company having entered into or executed said bond.' This agreement distinguishes that case from the instant case, and clearly entitled the surety company, acting in good faith, to employ counsel, as it did do. Other cases cited by counsel are likewise distinguishable from the instant case. Here the surety company was not given the right to employ counsel at its discretion. Upon the contrary, Burke Bros. agreed only 'to indemnify the surety company against losses, costs, damages, charges, and expenses resulting from any of their acts, default, or neglect'. It is true Burke Bros. were sued, and judgment for a large sum of money was asked against the surety company on account of the default and neglect of Burke Bros. But it was determined that Burke Bros. had been guilty of no acts, default, or neglect out of which any liability against the surety company arose. The surety company did not reserve to itself in the written application the right to employ counsel at Burke Bros.' expense, as was done in the Iowa case, *supra,* and the condition against which it had contracted did not arise, because it did not sustain or incur any liability on account of the acts, default, or neglect of Burke Bros., and the court properly so instructed the jury, . . . ''

Respondent contends that in the present case the facts are even more favorable to a ruling such as was made in the last cited case than was the factual situation in the Burke case, in that here there was no express indemnity agreement whatever entered into by respondent. In further support of his contention that at common law there was no implied obligation on the part of a principal to reimburse his surety for such expenses as are here sought to be recovered, the respondent cites the case entitled *Armstrong* v. *Anderson,* (Tex. Civ. App.) 91 S. W. (2d) 775, wherein recovery of attorneys' fees from the principal was sought by the surety on an appeal from a judgment rendered against both the principal and the surety in an action on the bond. In that case it appeared

that at the time the bond was given the principal had not entered into an indemnity agreement with the surety, although at a later time he did so. The court there held that the indemnity agreement subsequently executed was invalid, since it was not entered into until after the bond had been executed, and with regard to the contention of the surety that the law would *imply* an agreement on the part of the principal to pay the attorneys' fees, the court said:

"The surety company's position that the law *will imply* an agreement upon the part of a principal to repay to the surety the money it might be compelled to pay as attorney's fees in defending both itself and the principal cannot be sustained. The general rule is that *when a surety is forced to pay the debt of his principal* a promise on the part of the principal to repay him the amount so paid is implied and that the surety becomes a simple contract creditor of the principal. We know of no rule of law which allows a simple contract creditor to recover attorney's fees. That a surety is not entitled to recover attorney's fees in the absence of a contract therefor was held in *Hays* v. *Housewright,* (Tex. Civ. App.) 133 S. W. 922." (Italics ours.)

Likewise, the text writers agree that in the absence of an express contract of indemnity no cause of action to recover costs such as are here involved arises by implication of law in favor of a surety and against the principal unless the surety has satisfied all or some part of the principal's obligation.

Thus, in Spencer, on The General Law of Suretyship, 1913 edition, section 122, pages 161, 162, under the caption, "When the surety's Action for Reimbursement or Indemnity Accrues", the author says:

"In the absence of express contract, the surety's right to indemnity matures and is directly enforceable at law only when he has paid or discharged, in whole or in part, the debt or obligation of his principal. . . . the right to indemnity becomes enforceable whenever the surety has paid any part of the debt for which he is liable, . . . ", and in section 131, page 172, the author also says: "Generally, as we have seen, the principal is under no implied duty to indemnify the surety or guarantor until the latter has paid the debt or discharged the liability imposed upon him by his undertaking,

. . . But the surety may by express agreement contract for more or less than strict indemnity . . . ''

Also, in Stearns, The Law of Suretyship, fourth edition, sections 279, 280, pages 503, 507, it is said: "If the promisor in suretyship pays the debt of the principal in whole or in part, he is entitled to recover the amount paid from the debtor. If the principal makes no express promise to indemnify the one who engages to answer for his debt or default, the law will imply a promise. . . . But a cause of action against the principal does not arise until the promisor makes payment."

Appellant has cited the cases entitled *Ellis* v. *Norman,* (Ky.) 44 S. W. 429, and *Abeles* v. *Mitchell,* 13 Phila. (Pa.) 81, in support of its claim against the respondent herein. It appears that in each of those cases the plaintiff was a surety under a bail bond which was forfeited for nonappearance of the defendant. Thereafter each surety was successful in securing an advantage to itself as the outcome of proceedings to secure a reduction in the amount of liability on the bonds, and in each instance a civil action was brought by the surety to secure reimbursement from the principal for attorneys' fees incurred in the former proceedings. The claim of the sureties was upheld in each of those cases. However, we think those authorities are distinguishable from the present case in that in those cases each surety had become liable on the bond due to the default of the principal, whose acts had resulted in a forfeiture of the bond; and the principal thereupon became liable to the surety for the amount the latter would be compelled to pay. The proceedings taken by the sureties to reduce the bail had the effect of extinguishing the liability altogether in the one case, and of reducing it substantially in the other. The result of the action taken by the sureties in each case operated as a distinct benefit to the respective principals.

The theory of law which implies an obligation on the part of a principal to reimburse his surety, if and when the surety pays the obligation of the principal, is based upon equitable considerations. The liability of the latter is made to depend upon the damage suffered by the surety because of the default of the principal, and it is but equitable, in circumstances where the surety has satisfied the principal's obligation, that the latter should reimburse the surety. However,

where the surety has not been called upon to answer for the default of the principal, and has not paid any part of the principal obligation, it would seem equally just that no recovery of expenses should be imposed against the principal where the litigation out of which the expenses arose, in effect, resulted in a determination that there was no default upon the part of the principal. ■ Where the contingency against which the surety has contracted does not arise, and the surety sustains no damage and incurs no liability on account of the acts, neglect or default of the principal, in the absence of an express contract of indemnity, the latter ought not to be charged with the payment of expenses incurred by the surety in an action brought by a third person.

■ Notwithstanding what has been said hereinbefore with regard to equitable considerations, it appears that the provisions of section 2847, Civil Code, preclude the recovery herein sought. That section reads:

"If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he [the surety] has disbursed, including necessary costs and expenses; . . . "

That section presupposes the existence of a legal obligation against the principal, and the subsequent satisfaction or discharge of some part of such obligation by the surety before necessary "costs and expenses" of the latter may be recovered. The section only provides for a recovery of costs when the surety has disbursed some amount *"including* necessary costs and expenses". (Italics ours.) However, the appellant argues that the word "satisfies", as used in the section, does not necessarily mean to "pay" the amount of the bond or some part thereof, but that, in the circumstances existing here, the termination of the former action in favor of the surety should be deemed to have been a "satisfaction" of the principal obligation, so far as respondent's liability thereon is concerned. We do not believe the section was intended to have that construction. Furthermore, there was no judicial determination in the former action that the principal had defaulted. In Bouvier's Law Dictionary, third revision, volume 3, page 3007, the word "satisfied" when applied to a note or bond is said to mean that the instrument has been "paid". (To the same effect is *Windt* v. *Covert*, 152 Cal. 350, 354 [93 Pac. 67]; Anderson's Dictionary of Law, p. 920.) Furthermore,

section 2847 also refers to that which the surety has "disbursed". The latter word, in its general usage, usually has reference to the paying out or the expending of moneys or currency. (Anderson's Dictionary of Law, p. 359; Bouvier's Law Dictionary, 3d rev., vol. 1, p. 878.)

It follows from that which has been said hereinabove that there was no error in the ruling of the trial court.

The judgment is affirmed. The attempted appeal from the order denying the motion to file an amended complaint is dismissed.

Rehearing denied. Houser, J., did not participate.