[Civ. No. 20445.   Second Dist., Div. Two.   Apr. 19, 1955.]

LLOYD POTTER, Appellant, v. EZRA RICHARDS et al., Defendants; INGLEWOOD GENERAL HOSPITAL, Respondent.

Edward B. Freed for Appellant.

Reed & Kirtland, Robert C. Packard and Henry E. Kappler for Respondent.

McCOMB, J.—From a judgment of dismissal as to defendant Inglewood General Hospital, predicated upon the sustaining without leave to amend of demurrers, both general and special, to the fifth amended complaint in an action to recover damages for wrongful° death and personal injuries, plaintiff appeals.*

The fifth amended complaint is a plethora of words, a marvel of redundancy and a masterpiece of prolixity.

Analyzing the pleading, it discloses the following:

Paragraph I: Contains merely a general allegation of residence of the parties.

Paragraph II: Embraces the usual allegations respecting persons sued by fictitious names.

Paragraph III: It is alleged that the defendants Dr. Richards and the Inglewood General Hospital were acting in concert with each other and by and for themselves alone.

Paragraph IV: That the defendant James Beatty, a minor, was the issue of the marriage between plaintiff and the de-

---

*There are also attempted appeals from a number of nonappealable rulings and orders.

cedent, but that he is no longer an heir of the decedent since he has been adopted by other persons.

Paragraph V : This paragraph, over two pages in length, appears in general to contain the following allegations:

(a) That on or about June 1st the plaintiff with his wife, who was then believed to be pregnant, retained Dr. Ezra Richards, pursuant to an oral contract, to render medical care and treatment to the decedent;

(b) That plaintiff and his deceased wife, for a fee, agreed with the doctor that he would diagnose her then condition; that he would make continued diagnoses of her condition during pregnancy, continuous diagnoses of her condition in the post partum period until her discharge; that he would take a personal history, family history, a physiological and biological analyses of the decedent at that time and until such time as she should have regained the physical condition which she had prior to her pregnancy and he would obtain all information and analysis relative to care and treatment in consequence of previous pregnancies, if any, miscarriages, if any, medical history; that he would render periodic physical examinations during the progressive steps of pregnancy, periodic physical examinations after delivery of the child and during such period of time until she regained the same physiological and biological status that had existed prior to her pregnancy; that he would maintain and improve her health during the course of her pregnancy and return her health to a condition at least as good as prior to the pregnancy; that he would render total care of her as an individual during all of the foregoing times and would deliver the child, obtain and retain an adequately staffed and prepared hospital; that the hospital should be adequately prepared for any emergency which they knew or should have known might reasonably arise; that the hospital would perform in accordance with the doctor's direction, the care and treatment of the decedent during the onset of labor, during labor and the post partum care after delivery, involving the opening of the mouth of the uterus to full capacity, or if necessary, the performance of a caesarian section, together with rendering care and treatment in the event of an emergency. It is further alleged that the plaintiff and his deceased wife agreed with the doctor that he should take such steps as were proper to deliver the child, including the severance of the cord and the delivery of the placenta and to take personal care and supervision of the decedent for that period known medically

as one of imminent danger to the mother, within an hour to two hours after delivery of the child, to call and consult with outside physicians that might be necessary if an emergency arose, to retain, care for and treat the mother during the post partum period and to care for and treat the mother during the balance of the post partum period until the body returned to a normal, non-pregnant state.

Paragraph VI: It is herein alleged that thereafter and until the death of the decedent on January 22, 1952, the plaintiff was under the total, uninterrupted and continuous care of the doctor and of his selected hospital, the Inglewood General Hospital.

Paragraph VII: Paragraph VII merely alleges that the defendant Dr. Richards recommended that the decedent be placed in the care and custody of the Inglewood General Hospital as a part and parcel of his care and treatment of the decedent.

Paragraph VIII: In this paragraph it is alleged that the decedent, pursuant to the doctor's direction, placed herself in the custody and control and became a patient in the Inglewood General Hospital and that she did thereafter at all times remain in the care, custody and control, jointly and severally, of the hospital and Dr. Richards.

Paragraph IX: Paragraph IX appears to be an attempt on the part of the pleader to set forth the manner in which it is claimed that Dr. Richards was negligent in and about the care and treatment of the deceased wife. No effort will be made to analyze these lengthy allegations, since they do not pertain to respondent Inglewood General Hospital.

Paragraph X: Paragraph X relates solely to the conduct of the respondent Richards and the causal connection between the alleged negligence of Richards and the death of the decedent.

Paragraph XI: Paragraph XI is the critical paragraph insofar as the respondent hospital is concerned. It represents appellant's belabored and ineffectual effort to comply with liberal rules of pleading negligence, which have long been followed by our appellate courts. The very length of this paragraph demonstrates that plaintiff actually is merely giving lip service to the settled rules; he could easily plead his cause of action in a single short paragraph, if he in fact had any cause of action to plead.

It is alleged that the hospital was negligent and careless in that:

1. It was inadequately staffed as to personnel;

2. It is inadequately prepared as to facilities and supplies for the care and treatment of decedent or for any emergency that might and did arise in connection with the care and treatment of the decedent during her labor and during the time of delivery and during the post partum period immediately succeeding delivery and until the time of her death.

Paragraph XII alleges that the Inglewood General Hospital was a private institution, acting for and on behalf of themselves and the defendant Richards.

Paragraph XIII: Plaintiff has been deprived of the services, society, comfort, etc., of the decedent, to his damage in the sum of $35,000.

Paragraph XIV: Plaintiff has been deprived of the earning capacity of his wife and asks damage in that respect in the sum of $75,000.

Paragraph XV: That the defendants knew or should have known that if they were negligent or careless, the decedent could die and that if such a result occurred, the plaintiff, as husband, would suffer from shock, emotional upset, etc. That in truth and in fact the decedent did so die and by reason thereof the plaintiff became sick and required medical care and attention, all to his damage in the sum of $10,000.

Paragraphs XVI and XVII: That the defendants knew or should have known that if they were negligent and that if a death would result therefrom to the mother of the child, that the father would be unable to care for and look after the child; that plaintiff was unable to look after and care for the child and that by reason thereof the child has been adopted and that the plaintiff has by reason thereof suffered the loss of earnings of the child, all to his damage in the sum of $25,000.

Paragraph XVIII: Plaintiff has become liable for and paid burial expenses in the sum of $1,076.12.

To this pleading defendants interposed a general and special demurrer.

*Questions:* First: *Did the complaint state a case of action?* *No.* ▉ The rule is settled that in an action for negligence it is sufficient if the complaint alleges what was done negligently. (*Dunn* v. *Dufficy,* 194 Cal. 383, 387 [5] [228 P. 1029].)

▉ In the instant case a reading of the allegations of the complaint which we have summarized above fails to disclose the allegation of any fact or facts which were negligently performed or omitted to be performed which were the proxi-

mate cause of the death of plaintiff's wife. All that is alleged in the way of facts relative to the death of plaintiff's wife is that it is alleged sometime after she entered the hospital she passed away. There is no fact or facts showing the proximate cause of her death.

Clearly such allegations are not sufficient to state a cause of action.

■ As to the purported second cause of action, that plaintiff became sick as a result of the death of his wife, this may all be assumed to be true, but in the absence of an allegation of fact or facts showing that defendants negligently caused the death of plaintiff's wife, there is no causal connection between any act of defendants and plaintiff's illness. Hence, he has failed to state a cause of action on this theory.

It would serve no useful purpose to review in detail the special demurrers filed by defendants. Suffice it to say that the grounds thereof were well taken and the trial court sustained both the general and special demurrers.

*Dunn* v. *Duffcy,* 194 Cal. 383 [228 P. 1029] and *Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97 [114 P.2d 1], relied on by plaintiff, are each factually distinguishable from the allegations in the questioned pleading. In each of the cited cases facts were alleged showing the negligent acts charged against defendants.

Second: *Did the trial court err in sustaining the demurrers to the fifth amended complaint without leave to amend?*

*No.* ■ Where several successive amended complaints have been vulnerable to demurrer on the same ground, as in the instant case, the trial court may reasonably conclude that the complaint is incapable of being amended to state a cause of action and does not abuse its discretion in sustaining a demurrer to the fifth amended complaint without leave to amend. (*Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [5] [227 P.2d 251].)

Third: *Are appeals from (a) an order striking a portion of an amended complaint; (b) an order of the trial court made in open court sustaining defendants' demurrer to an amended complaint and by which the court denied plaintiff's oral motion for permission to file an amended complaint; (c) an order of the trial court denying plaintiff's motions to vacate the judgment, vacate the order sustaining the demurrer without leave to amend, and denying the motion to file a proposed sixth amended complaint; and (d) a minute order sustaining the demurrer without leave to amend, appealable orders?*

*No.* ■ (a) An appeal does not lie from an order striking out certain portions of a complaint. (*Bryant* v. *Kelly,* 203 Cal. 721, 722 [1] [265 P. 817]; *Cecil* v. *Gallo,* 57 Cal.App.2d 145 [1] [134 P.2d 497].)

■ (b) An appeal does not lie from an order denying a motion for leave to file an amended complaint. (*Pacific Indem. Co.* v. *Harper,* 14 Cal.2d 379, 387 [94 P.2d 586, 124 A.L.R. 1169]. *Cf. Marx* v. *McKinney,* 23 Cal.2d 439, 443 [4] [144 P.2d 353].)

■ (c) An appeal does not lie from an order of the trial court denying motions to vacate the judgment, vacate the order sustaining the demurrer without leave to amend, and denying a motion to file an amended complaint. (*Bixby* v. *California Trust Co.,* 33 Cal.2d 495, 499 [5] [202 P.2d 1018]; *Pacific Indem. Co.* v. *Harper, supra,* p. 387.)

■ (d) An appeal does not lie from an order sustaining a demurrer without leave to amend. (*Steiner* v. *Darby,* 88 Cal.App.2d 481, 498 [9] [199 P.2d 429]', hearing denied by the Supreme Court.)

The judgment is affirmed and the purported appeals by plaintiff from the various orders set forth above are dismissed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied May 16, 1955, and appellant's petition for a hearing by the Supreme Court was denied June 16, 1955.