Electra M. SCOTT, individually, and Electra M. Scott, Executrix of the Estate of Ernest R. Scott, Deceased, Plaintiffs in Error,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant in Error.

No. 40341.

Supreme Court of Oklahoma.

Sept. 30, 1964.

Rehearing Denied and Opinion Amended Dec. 1, 1964.

Application for Leave to File Second Petition for Rehearing Denied Feb. 9, 1965.

Spillers, Spillers & Givens, Tulsa, for plaintiffs in error.

Gable, Gotwals & Hays, Tulsa, for defendant in error.

BLACKBIRD, Chief Justice.

The parties appear here in reverse order to their appearance in the trial court. For clarity and brevity Electra M. Scott, in both of her capacities as an individual and executrix, will be referred to collectively as "plaintiff", while Metropolitan Life Insurance Company, principal defendant in that court, will be referred to merely as "insurer".

As plaintiff's present appeal has been perfected from the trial court's judgment dismissing the action, as a result of its having sustained the insurer's demurrers to plaintiff's amended petition, and plaintiff's election to stand on said pleadings, the allegations of her amended petition are quoted, as follows:

"That Electra M. Scott is the surviving wife of Ernest R. Scott, deceased, and was appointed as Executrix of his estate by the County Court of Tulsa County, Oklahoma, on or about the 13th day of October, 1960; that Ernest R. Scott died a resident of Tulsa County, Oklahoma, on or about August 21, 1960.

"That the defendant, Metropolitan Life Insurance Company, is a foreign corporation organized under the laws of the State of New York and authorized to do business as an insurance company in the State of Oklahoma, and service of process can be had against the same by serving the Oklahoma State Insurance Commissioner.

"That the defendant, Knotts Rambler Ranch, Inc., is an Oklahoma corporation with its principal place of business at 2802 East 11th Street, Tulsa, Oklahoma.

"That on or about March 21, 1960, Ernest R. Scott and Electra M. Scott, individually, purchased a certain 1959 Chrysler Imperial automobile from Knotts Rambler Ranch, Inc., in Tulsa, Oklahoma, agreeing to pay therefor the sum of $4,892.00. That toward such purchase price, the Scotts paid a $1,000.00 cash payment and further signed a promissory note in the amount of $4,877.10, which included the unpaid balance, plus a finance charge in the amount of $622.17 and a charge of insurance in the amount of $362.93.

"Knotts Rambler Ranch, Inc., thereafter discounted the said note to the Utica Square National Bank of Tulsa, Oklahoma, and received a sum of money unknown to the plaintiffs for assignment thereof.

"The Scotts also executed a mortgage to secure the said indebtedness, a copy of which is attached as Exhibit A to the original petition herein and made a part of this petition the same as if fully set forth.

"Prior to the death of Ernest R. Scott, the Scotts paid the sum of $487.-71 toward the unpaid balance of $4,-877.10, leaving a balance of $4,389.39 at the date of death. .

"That prior to purchase of the said automobile and on or about November 1, 1959, Knotts Rambler Ranch, Inc. was issued a certain creditors group life insurance policy, No. 19533–G, by the defendant Metropolitan Life Insurance Company, a copy of which is attached as Exhibit B (in 5 pages) to the original petition herein and made a part hereof as fully as if set forth again.

"That by the terms of the purchase agreement between the Scotts and Knotts Rambler Ranch, Inc., which agreement was oral, Knotts Rambler Ranch, Inc., represented and promised Ernest R. Scott and Electra M. Scott that they would procure insurance in the amount of the indebtedness, on a declining basis, against the death of either Ernest R. Scott or Electra M. Scott and represented and promised that the said insurance policy, Exhibit B, extended to and insured against the death of Ernest R. Scott or Electra M. Scott, for which coverage the Scotts agreed to pay the sum of $121.95, which amount was included in the total of $362.93 charged for insurance as aforesaid.

"That on or about May 18, 1960, Knotts Rambler Ranch, Inc. forwarded or paid to Metropolitan Life Insurance Company the sum of $54.33, which represented the premium due on the indebtedness owing by the Scotts, or $4,877.10, by the terms of Section 6(B) of the policy. That accompanying said remittance was a statement showing the amount of the insured balance and the premium due and remitted, which statement is attached as Exhibit C to the original petition herein and made a part hereof by reference as fully as if set forth again.

"That the difference between the total amount of $121.95 charged by Knotts Rambler Ranch, Inc., to the Scotts and the $54.33 premium remitted to Metropolitan Life Insurance Company, or $67.62, was retained by Knotts Rambler Ranch, Inc., as commission, fee or profit.

"That by the terms of the said creditors group life insurance policy, it was provided that no person originally indebted to Knotts Rambler Ranch, Inc. in excess of $3,500.00 was insured and that the total amount of insurance on any debtor covered by the policy was to be the lesser of the total amount of his indebtedness or $3,500.00.

"That said amount of $54.33 was accepted and retained by the defendant, Metropolitan Life Insurance Company, without protest and with full knowledge that it was collected by Knotts Rambler Ranch, Inc. on a single trans-

action wherein the unpaid balance owing to Knotts Rambler Ranch, Inc. was in excess of the $3,500.00 purported limitation mentioned in the policy. That said action on the part of the defendant, Metropolitan Life Insurance Company, represented a waiver of the terms of the policy purporting to (1) limit the amount of insurance to the lesser $3,500.00 or the amount of any debtor's indebtedness, and (2) excluding debtors having original outstanding balances in excess of $3,500.00.

"That Knotts Rambler Ranch, Inc. in collecting and remitting the premium specified in the said insurance policy, and in making the report herein mentioned, acted as the agent of the defendant, Metropolitan Life Insurance Company, in a manner authorized by the insurance company as set forth in the terms of said policy.

"That the plaintiffs did, on or about September 10, 1960, and at numerous times thereafter, make demand upon the defendants for payment of the amount of insurance due, $4,389.39, but they have refused to pay this or any other amount and have only tendered the return of the premium of $121.95, which tender has been refused by the plaintiffs. Proof of death, as required by the terms of the policy, was also made to the insurance company on or about September 10, 1960.

"Wherefore, plaintiffs pray judgment against the defendants for the sum of $4,389.39, together with interest thereon at the rate of Six Per Cent (6%) from and after September 10, 1960, until fully paid and satisfied."

█ The situation presented in this case, is in all material aspects similar to the one involved in American Liberty Ins. Co. v. Baird, 176 Okl. 132, 57 P.2d 829, wherein the insurer agreed, by the policy it issued, to make the monthly payments due Simpson Auto Company, on an automobile the plaintiff, Wilson D. Baird, purchased from Simpson, in the event of, and during; said plaintiff's total disability. After Baird became totally disabled, and upon the insurer's refusal of his demand upon it to make the auto payments, he made them himself, and later brought suit against the insurer for reimbursement. The insurer defended on the ground, among others, that if it was liable to anyone that one was Simpson Auto Company. There, this Court held that, under the circumstances, plaintiff, Baird, was subrogated to the rights, under the policy, of the Auto Company, and affirmed the judgment in his favor. Here, it is just as obvious from an examination of the policy involved, that any payments the insurer agreed to make to Knotts were to be made for the benefit of the plaintiff and her husband, as it was that the payments to the insurer in that case agreed to make to Simpson Auto Company, under the policy there involved, were to be paid for the benefit of Baird. If the plaintiff in that case stood in the position of a surety— with the insurer as principal—then the same is true of the positions of the plaintiff and insurer in this case; and—just as there—when plaintiff paid the indebtedness due on the auto, she thereby became subrogated to the auto dealer's rights, as against the defendant insurer. In this connection, see also Commercial Credit Company v. Eisenhour, 28 Ariz. 112, 236 P. 126, 41 A.L.R. 1274.

█ Under her PROPOSITION III, plaintiff calls attention to the allegations of her Second Amended Petition to the effect that the insurer waived, or is estopped to assert as a defense, the provisions of the policy's Sections 1(A) and 5, purporting to limit its maximum coverage to $3500.00, in view of having accepted a premium from Knotts in an amount exactly equal to the sum obtained by multiplying the entire balance due on the auto indebtedness, by the premium rate prescribed in the rate schedule appearing in the policy's Section 6(B). The facts alleged in her pleading specifically show that this acceptance of said premium was with knowledge on the

insurer's part that it was to pay for coverage on the entire debt balance.

The insurer counters plaintiff's PROPOSITION III by arguing that plaintiff's claim is invalid because: A. There being no privity of contract between these two parties, she cannot assert waiver and estoppel; B. Such doctrine cannot extend the coverage of the policy to a larger debt balance than the provisions of the policy itself allow; and C. Plaintiff's alleged cause of action lacks two important elements of estoppel, because her pleading fails to allege that "she or Mr. Scott relied in good faith upon any action of * * * (the insurer) to their detriment."

The insurer quotes extensively from Appleman's Insurance Law and Practice, Vol. 16, p. 629, and cites many cases in support of its position, but we consider none of them applicable to the facts in this case. Here, we have already determined that plaintiff's position, in relation to the insurer, is the equivalent of that of a surety to a principal. Her pleading shows that she has discharged a debt, which, because of the insurance policy, the insurer was obligated to pay when Mr. Scott died, unless it can invoke the policy's limitations above referred to. The insurer does not claim that the facts plaintiff alleges are insufficient to support an inference therefrom that she was never apprised, and did not know, of such limitations or restrictive policy provisions. We think, in the situation here presented, plaintiff is not bound by them. As above demonstrated, plaintiff, being in the position of a surety, after payment of a claim that might have been asserted by Knotts against the insurer, as principal obligor, under its insurance contract, she has all of the rights of a surety; and we think she is in as good a position as was the defendant in Valente v. Porto, 93 Conn. 146, 105 A. 338, cited opposite Note 3 in 72 C.J.S. Principal and Surety § 325, p. 790. After such payment occurred, her cause of action against the insurer did not depend solely upon the provisions of the insurance contract, but was based principally upon such a surety's right of reimbursement from the principal. Said right arises by reason of an implied contract to repay under the common law and doctrine of subrogation, and is also vested in the surety expressly by statute both of this State, and others. See, for instance, Tit. 15 O.S. 1961 § 381 and section 8205, Montana Revised Codes, cited in Maryland Cas. Co. v. Walsh, 116 Mont. 559, 155 P.2d 759, and Cal.Civ.Code, section 2847, cited in Pacific Indemnity Co. v. Harper, 14 Cal.2d 379, 94 P.2d 586, 589, 124 A.L.R. 1169, 1173. As to this, and related matters, notice Maryland Casualty Co. v. King, Okl., 381 P.2d 153; W. H. Marston Co. v. Kochritz, 109 Cal.App. 331, 293 P. 120, and Bray v. Cohn, 7 Cal.App. 124, 93 P. 893.

In view of the foregoing, we are not impressed by the claimed deficiencies in plaintiff's alleged cause of action, attributed by the insurer to certain provisions of the insurance contract entered into between it and Knotts. In view of our conclusion that, in certain aspects of her position, plaintiff is independent of that contract, and can sue for the entire sum she seeks, we find it unnecessary to discuss other arguments in the briefs.

In accord with the foregoing, we hold that, on the basis of the facts pleaded in her Second Amended Petition, plaintiff is a proper party to sue the insurer in the present action, that said pleading states a valid cause of action against it for the sum she seeks, and that the trial court erred in sustaining the insurer's demurrers thereto. The judgment of said court is therefore reversed, with instructions to vacate same and proceed in a manner not inconsistent with the views expressed herein.

HALLEY, V. C. J., and JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.

JACKSON, J., dissents.