[No. B130412. Second Dist., Div. Three. Aug. 18, 2000.]

R. P. RICHARDS, INC., Plaintiff and Respondent, v.
CHARTERED CONSTRUCTION CORPORATION, Defendant and
Appellant.

[No. B131672. Second Dist., Div. Three. Aug. 18, 2000.]

R. P. RICHARDS, INC., Plaintiff and Appellant, v.
CHARTERED CONSTRUCTION CORPORATION et al., Defendants and
Respondents.

## COUNSEL

Herrig & Vogt, George F. Vogt and C. Patrick Stoll for Plaintiff and Appellant and for Plaintiff and Respondent.

Irsfeld, Irsfeld & Younger, C. Phillip Jackson and Diane L. Walker for Defendant and Appellant and for Defendant and Respondent Chartered Construction Corporation.

Gibbs, Giden, Locher & Turner, Joseph M. Giden and Paul Buchberg for Defendant and Respondent Travelers Casualty and Surety Company.

## OPINION

**CROSKEY, J.**—Plaintiff R. P. Richards, Inc. (Richards), a subcontractor, sued defendant Chartered Construction Corporation (Chartered), a general contractor, and defendant Travelers Casualty and Surety Company[1] (Travelers) to enforce a stop notice and a stop notice release bond. Richards settled with Chartered, obtained a judgment to enforce the settlement, and continued to prosecute the claim against Travelers as surety. The trial court concluded that the original obligation had been altered without Travelers's consent thereby exonerating Travelers as surety (Civ. Code, § 2819),[2] granted Travelers's motion in limine to exclude all evidence other than the settlement agreement, and entered judgment in favor of Travelers.

Richards appeals (in case No. B131672) the judgment in favor of Travelers contending (1) Travelers as surety owes it an independent obligation that is enforceable notwithstanding Richards's settlement with Chartered; (2) sections 3225 and 3226 expressly provide that an alteration of the original obligation does not exonerate the surety on a bond relating to a work of improvement, and section 2819 does not apply; and (3) Travelers consented to the settlement agreement and therefore cannot be exonerated under section 2819 even if it applies. We conclude that the release of Chartered's

---

[1] Travelers was formerly known as Aetna Casualty and Surety Company.
[2] All statutory references are to the Civil Code unless otherwise specified.

original obligation to Richards exonerated Travelers as surety because it impaired Richards's rights and remedies against Chartered and because Chartered's liability on the principal obligation ceased. We therefore affirm the judgment in favor of Travelers.

Chartered appeals (in case No. B130412) an attorney fees award in favor of Richards contending the attorney fees clause of their settlement agreement does not encompass fees incurred to prosecute the action against Travelers, as awarded by the court. We affirm the award. Chartered also asserts a "protective appeal" to be considered only if we reverse the judgment in favor of Travelers. Since we affirm the judgment, that part of Chartered's appeal is moot.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

Chartered as general contractor contracted with the Delano Joint Union High School District in Fresno County in or about May 1993 to construct a work of improvement. Richards as subcontractor contracted with Chartered to perform certain mechanical work.

A dispute arose concerning Richards's work and progress payments due from Chartered. Richards filed a stop notice (§ 3103) in May 1994 claiming that $394,054.38 was due and owing from Chartered and filed an amended stop notice in July 1994 increasing the amount to $498,238.76. Travelers as surety executed a stop notice release bond (§ 3196) in October 1994 guaranteeing the payment due on Richards's claim.

Richards sued Chartered, the school district, and others in Santa Barbara County Superior Court in June 1994 to enforce the stop notice and stop notice release bond, among other causes of action. It later substituted Travelers for a fictitious defendant. The court stayed the action pending arbitration and transferred the action to Los Angeles County Superior Court in August 1994.

Richards and Chartered entered into a settlement agreement during the arbitration in April 1996 releasing all mutual claims, present and future, arising from the subject matter of the action other than the enforcement of the settlement agreement. Chartered agreed to pay Richards $575,000, including $385,000 for work performed and $180,000 for attorney fees, plus interest over several years and also agreed to join Richards as plaintiff in another action pending against the school district and others.

---

[3]We recite the undisputed facts before the court when it determined that Travelers was entitled to judgment as a matter of law.

The settlement agreement contained an attorney fees clause: "Each party hereto further agrees that in the event of any dispute or litigation between the undersigned and any of the parties named herein arising out of this Agreement or the settlement contemplated hereby, including the necessity of any person to defend any action which has been covered hereby or to prosecute any action to enforce this Agreement, the prevailing party shall recover all costs and expenses including reasonable attorney fees and any judgment or decision rendered may specifically include such costs, expenses and reasonable attorney fees."

Travelers was not a party to the settlement agreement and the parties did not request its consent prior to executing the agreement. Richards and Chartered asked the trial court to retain jurisdiction over the action until the settlement agreement was fully performed. Richards dismissed the other defendants.

Chartered defaulted on a settlement payment in January 1998. Richards successfully moved to lift the stay and resumed prosecution of the action against Chartered and Travelers. Travelers then moved for summary judgment on the grounds that the release of Chartered's original obligation to Richards exonerated Travelers as surety and that the alteration of the original obligation exonerated Travelers as a matter of law. Richards opposed the motion arguing that the release of Chartered was conditional upon full payment under the settlement agreement, which had not occurred; that sections 3225 and 3226 preserved Travelers's obligation as surety, and section 2819 did not apply; and that a triable issue of fact existed as to whether Travelers had consented to the settlement. The court concluded that the release of the original obligation was conditional upon full payment under the settlement agreement, which had not occurred, and denied the motion in December 1998.

Richards moved for entry of judgment against Chartered pursuant to the settlement in December 1998. The court granted the motion and entered judgment in favor of Richards in January 1999. The judgment awarded attorney fees to Richards but did not state the amount. Richards then moved for an attorney fees award in the amount of $43,865.80 based on the attorney fees clause in the settlement agreement. Chartered opposed the motion on the ground that the clause did not encompass fees incurred to prosecute the action against Travelers. The court granted Richards's motion for attorney fees and awarded the full amount requested in March 1999. Chartered appealed the judgment.

The trial of Richards's remaining claim against Travelers was scheduled to commence in February 1999. Travelers filed a motion in limine in January

1999 to exclude all evidence other than the settlement agreement on the ground that it was exonerated as surety, asserting the same arguments as in its unsuccessful motion for summary judgment. Richards opposed the motion arguing that the denial of Travelers's summary judgment motion was res judicata and reasserted its previous arguments in opposing summary judgment. The court concluded that Chartered's original obligation had been altered by the extension of the time for payment without Travelers's consent resulting in Travelers's exoneration as surety under section 2819, and that the entry of judgment against Chartered precluded recovery against Travelers. It granted Travelers's motion, decided that Travelers was entitled to a defense judgment as a matter of law, and entered judgment in favor of Travelers in March 1999. Richards appealed the judgment. We have consolidated the two appeals.

## CONTENTIONS

Richards contends (1) Travelers as surety owes it an independent obligation that is enforceable notwithstanding Richards's settlement with Chartered; (2) sections 3225 and 3226 expressly provide that an alteration of the original obligation does not exonerate the surety in connection with a work of improvement, and section 2819 does not apply; and (3) Travelers consented to the settlement agreement and therefore cannot be exonerated under section 2819 even if it applies.[4]

Chartered contends the attorney fees clause in the settlement agreement does not encompass fees incurred to prosecute the action against Travelers, as awarded by the court. Richards contends this court has no jurisdiction to review the attorney fees award because Chartered did not appeal the post-judgment order awarding attorney fees.

## DISCUSSION

1. *Standard of Review*

■ We independently review the trial court's determination that Travelers was exonerated as surety as a matter of law. Statutory construction and

---

[4]Richards also argues without citation to authority that the trial court's denial of Travelers's summary judgment motion and this court's summary denial of Travelers's petition for writ of mandate challenging the ruling conclusively determined that the release did not exonerate Travelers as surety and that determination is binding on the trial court. We deem this issue as waived due to Richards's failure to support the claim of error with reasoned argument and citation to authority. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].) In any event, the denial of a summary judgment motion is not res judicata (*De La Pena v. Wolfe* (1986) 177 Cal.App.3d 481, 485 [223 Cal.Rptr. 325]), and the summary denial of a writ petition does not establish law of the case. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 899 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

the application of a statute to undisputed facts are legal issues that we review de novo. (*Kurtz v. Calvo* (1999) 75 Cal.App.4th 191, 193 [89 Cal.Rptr.2d 99].) We affirm the judgment if it is correct on any ground, regardless of the trial court's reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ We independently determine the scope of an attorney fees clause when the contract interpretation does not turn on extrinsic evidence, as here. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

### 2. *Travelers's Obligations as Surety*

■ "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another . . . ." (§ 2787.) A surety assumes liability to the promisee for the payment or performance that is due to the promisee from a third party (the principal). The surety becomes liable to the promisee immediately upon the principal's default. (§ 2807.)

Certain acts by the promisee exonerate, or release, the surety. Section 2819 states that the surety is exonerated if the promisee alters the principal obligation in any respect or impairs or suspends the promisee's rights or remedies against the principal, unless the surety consents or is indemnified by the principal.[5] ■ Section 2819 applies only where there is a material alteration of the principal obligation in a manner not originally contemplated by the surety (*ITT Diversified Credit Corp. v. Highlands Ins. Co.* (1987) 191 Cal.App.3d 301, 308 [236 Cal.Rptr. 433]; *Verdugo Highlands, Inc. v. Security Ins. Co.* (1966) 240 Cal.App.2d 527, 530-532 [49 Cal.Rptr. 736]), irrespective of whether the alteration is prejudicial to the surety (*First Cong. Church of Christ v. Lowrey* (1917) 175 Cal. 124, 126 [165 P. 440]; *Verdugo*, at p. 530).[6]

■ The promisee's release of the principal extinguishes the principal obligation and impairs the promisee's rights and remedies against the principal within the meaning of section 2819. (*Bennett v. Leatherby* (1992) 3

---

[5]"A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended. . . ." (§ 2819.)

[6]If the promisee agrees to accept from the principal less than the full amount due on the original obligation without the surety's prior consent and "without any other change to the underlying agreement between the creditor and principal debtor," section 2819 does not exonerate the surety from liability for the lesser agreed amount. (§ 2822, subd. (b).) Richards failed to raise this issue in its opening brief on appeal, although it quoted the statute in its reply brief without meaningful supporting argument. We therefore deem the issue as waived (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10 [66 Cal.Rptr.2d 319, 940 P.2d 906];

Cal.App.4th 449, 452-453 [4 Cal.Rptr.2d 340].) The surety therefore is exonerated by operation of law under section 2819. (*Bennett*, at pp. 452-453.)

In addition, section 2810 states that the surety is not liable if the principal's liability ceases on grounds other than the principal's "mere personal disability," unless the surety assumed liability with knowledge of the existence of the defense.[7] Personal disabilities that ordinarily would not exonerate the surety include the principal's bankruptcy or death. (See Conners, Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar 1969) § 3.9, p. 22.) Section 2825 provides further that the discharge of the principal by operation of law does not exonerate the surety absent some action or omission by the promisee.[8] The promisee's release of the principal without the surety's prior knowledge is an action by the promisee that causes the principal's liability to cease within the meaning of sections 2810 and 2825, resulting in the exoneration of the surety. (See *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 634 [147 Cal.Rptr. 486, 581 P.2d 197] [discussing the interrelation of §§ 2810 and 2825].)

Richards fully released Chartered from its claim for payment under the bonded obligation and accepted, in lieu thereof, an unbonded obligation under the settlement agreement. Although Richards notified Travelers of the proposed settlement agreement prior to its execution, it neither requested nor received Travelers's consent,[9] and there is no evidence that Travelers knew of the release at the time that it provided the bond. The negotiated release fully extinguished Chartered's bonded obligation to Richards. This constituted an impairment of Richards's rights and remedies against Chartered on that bonded obligation. (*Bennett v. Leatherby, supra*, 3 Cal.App.4th at pp. 452-453.) Under section 2819, this had the legal consequence of exonerating Travelers as surety. (*Bennett*, at pp. 452-453.) Moreover, under section 2810, Chartered's liability on the original obligation ceased when Richards released it, resulting in the exoneration of Travelers as surety.

---

*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770]) and will not consider whether section 2822, subdivision (b), applies in these circumstances.

[7]"A surety is liable, notwithstanding any mere personal disability of the principal, though the disability be such as to make the contract void against the principal; but he is not liable if for any other reason there is no liability upon the part of the principal at the time of the execution of the contract, *or the liability of the principal thereafter ceases*, unless the surety has assumed liability with knowledge of the existence of the defense. . . ." (§ 2810, italics added.)

[8]"A surety is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor." (§ 2825.)

[9]Travelers's prior knowledge of the settlement agreement does not establish consent.

### 3. *Sections 3225 and 3226*

■ Sections 3225 and 3226 limit the defenses available to a surety on a bond relating to a work of improvement.[10] Section 3225 states that the "change, alteration, or modification" of an obligation or "extension of the time for any payment" does not exonerate the surety on a bond relating to a work of improvement, and section 3226 states that the sole conditions for recovery on the bond are that the obligee is a qualified claimant under the statutes and has not been paid the full amount of its claim. Thus, section 3225 creates an exception to the general rule of exoneration under section 2819. Based on the text of the two statutes and the apparent purposes of section 3225, we conclude that section 3225 does not apply where the promisee *releases* the principal obligation.

■ The fundamental goal of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the statute. (Code Civ. Proc., § 1859; *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) In construing a statute, we look first to the statutory language. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].) If the language is susceptible to more than one reasonable construction, we consider other indicators of legislative intent, including the apparent purpose of the statute. (*Id.* at p. 776; *People v. Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481].)

■ The language of the two statutes is similar in some respects and different in others, causing us to conclude that section 3225 was not necessarily intended to apply in every case involving a surety on a bond relating

---

[10]"The surety or sureties on any bond given pursuant to any of the provisions of this title shall not be exonerated or released from the obligation of the bond by any change, alteration, or modification in or of any contract, plans, specifications, or agreement pertaining or relating to any scheme or work of improvement or pertaining or relating to the furnishing of labor, materials, or equipment therefor, nor by any change or modification of any terms of payment or extension of the time for any payment pertaining or relating to any scheme or work of improvement, nor by any rescission or attempted rescission of the contract, agreement or bond, nor by any conditions precedent or subsequent in the bond attempting to limit the right of recovery of claimants otherwise entitled to recover under any such contract or agreement or under the bond, nor, where the bond is given for the benefit of claimants, by any fraud practiced by any person other than the claimant seeking to recover on the bond." (§ 3225.)

"Any bond given pursuant to the provisions of this title will be construed most strongly against the surety and in favor of all persons for whose benefit such bond [has been] given, and under no circumstances shall a surety be released from liability to those for whose benefit such bond has been given, by reason of any breach of contract between the owner and original contractor or on the part of any obligee named in such bond, but the sole conditions of recovery shall be that claimant is a person described in Section 3110, 3111, or 3112, and has not been paid the full amount of his claim." (§ 3226.)

to a work of improvement where section 2819 applies. Section 2819 exonerates the surety where the principal obligation is "altered in any respect" or the promisee's rights or remedies against the principal obligor are "in any way impaired or suspended." (§ 2819.) Section 3225 provides that the surety on a bond relating to a work of improvement is not exonerated where there is "any change, alteration, or modification" in any contract or other matter relating to a work of improvement, "any change or modification of any terms of payment or extension of the time for any payment," "any rescission or attempted rescission of the contract, agreement or bond," "any conditions precedent or subsequent in the bond," or "where the bond is given for the benefit of claimants, . . . any fraud practiced by any person other than the claimant seeking to recover on the bond." (§ 3225.)

Although the language "change, alteration, or modification" in section 3225 approximates the language "altered in any respect" in section 2819, the enumeration of other specific circumstances in section 3225 does not approximate the more general language "in any way impaired or suspended" in section 2819, and the specific circumstances listed in section 3225 do not include the release of an obligation. From this we conclude that section 3225 could not properly be construed to apply to a release of the principal obligation *unless* a release is considered a "change, alteration, or modification" of a contract relating to a work of improvement. We construe that clause in accordance with the apparent purpose of section 3225.

Contracts relating to works of improvement often are subject to change as to the nature of the work to be performed, materials to be used, timing, and other matters relating to the manner and method of performance. (See Cal. Mechanics' Liens and Related Construction Remedies (Cont.Ed.Bar 3d ed. 1999) § 10.59, p. 594; 1 Stein, Construction Law (2000) ¶ 4.02[1], p. 4-5.) To exonerate the surety whenever such a change is made would render illusory the protection offered by the bond to subcontractors and others or would impose on them an onerous requirement to obtain the surety's consent to every change. The apparent purpose of section 3225 is to avoid that result.

The release of an obligation differs materially from the change, alteration, or modification of a contract relating to a work of improvement that is common in construction projects. Unlike an obligation that merely has been changed, altered, or modified, a released obligation ceases to exist, cannot be enforced against the principal, and cannot support a surety's right of reimbursement against the principal (§ 2847). (Cf. *Pacific Indemnity Co. v. Harper* (1939) 14 Cal.2d 379, 386 [94 P.2d 586, 124 A.L.R. 1169].) Neither the language of section 3225 nor its apparent purpose suggests that it applies

to the release of the principal obligation. We therefore construe section 3225 to apply to a change, alteration, or modification of the principal obligation, but not to its release.[11] We also construe the "extension of the time for any payment" in section 3225 to refer to payment of the bonded principal obligation, not the payment of an independent obligation that the surety never guaranteed (i.e., the negotiated settlement agreement that we have in this case). Finally, our holding that the surety is exonerated does not impose a "condition of recovery" on the bond within the meaning of section 3226, but merely recognizes that there can be no recovery on the bond when there is no underlying bonded obligation by virtue of the promisee's negotiated release.

### 4. *Attorney Fees Against Chartered*

■ A postjudgment order awarding attorney fees is separately appealable. (Code Civ. Proc., § 904.1, subd. (a)(2); *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].) The failure to appeal an appealable order ordinarily deprives the appellate court of jurisdiction to review the order. (*Praszker*, at p. 46.) However, when the judgment awards attorney fees but does not determine the amount, the judgment is deemed to subsume the postjudgment order determining the amount awarded, and an appeal from the judgment encompasses the postjudgment order. (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998 [3 Cal.Rptr.2d 654].) We therefore proceed to consider the merits of Chartered's appeal.

■ Attorney fees can be awarded as costs to the prevailing party when authorized by contract. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10); *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4 [71 Cal.Rptr.2d 830, 951 P.2d 399].) The settlement agreement between Richards and Chartered expressly provides for attorney fees to the prevailing party in any litigation between Richards and Chartered and any of the other parties named in the

---

[11]Our conclusion that section 3225 does not except a release of the principal obligation from the general rule of exoneration applies equally to the rules of exoneration in both sections 2819 and 2810.

We are not dissuaded by dictum in *Bloom v. Bender* (1957) 48 Cal.2d 793, 801 [313 P.2d 568], stating that the release of the principal obligor was an alteration of the principal obligation under section 2819. Section 2819 applies not only when the principal obligation is "altered in any respect" but also when the remedies or rights of the obligee against the principal obligor are "impaired or suspended" (§ 2819), as the court also noted. (*Bloom*, at p. 800.) Moreover, the court held that the surety had consented to the release and therefore was not exonerated under section 2819. (*Bloom*, at p. 801.)

settlement agreement, arising out of the settlement.[12] The provision expressly includes, but is not limited to, litigation to enforce the settlement agreement. Richards resumed prosecution of the previously stayed action against both Chartered and Travelers because Chartered had breached the settlement agreement. We conclude that the renewed prosecution of the action against Travelers arose out of the settlement within the meaning of the attorney fees clause.

Travelers, although not a party to the settlement agreement, is among the parties to this action identified in paragraph A of the agreement. The attorney fees clause encompasses the present litigation between Richards and Travelers as a party named in the settlement agreement. There is no indication that Richards and Chartered intended to limit the recovery of attorney fees in litigation within the scope of the clause to only those fees incurred as between each other, and the reference to litigation against other parties indicates otherwise. Moreover, the renewed litigation against Travelers, and the resulting increase in attorney fees, was directly caused by Chartered's breach of its promise in the settlement agreement. We therefore conclude that the attorney fees clause encompasses fees incurred by Richards to prosecute this action against Travelers. Chartered has not shown error.

### DISPOSITION

The judgment in each appeal is affirmed. Travelers shall recover its costs on appeal against Richards with respect to case No. B131672, and Richards shall recover its costs on appeal against Chartered with respect to case No. B130412.

Klein, P. J., and Kitching, J., concurred.

---

[12]Chartered does not challenge the determination that Richards was the prevailing party and therefore waives that issue on appeal. (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1 [54 Cal.Rptr.2d 512].)