[No. C043812. Third Dist. Mar. 22, 2004.]

COUNTY OF SAN JOAQUIN et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD et al., Respondents

COUNSEL

Hanna, Brophy, MacLean, McAleer & Jensen and Jeffery V. Lusich for Petitioners.

Vincent Bausano and Neil P. Sullivan for Respondents.

OPINION

**MORRISON, J.**—A workers' compensation applicant and her employer settled her case by giving her a lump-sum payment, but crediting the employer for certain advances, both in a specified amount and "further" amounts subject to proof. A workers' compensation judge (WCJ) approved the settlement, but later ruled the employer was not entitled to "further" credits. On reconsideration, the Workers' Compensation Appeals Board (Board) agreed with the WCJ. We annul the Board's decision because it deprives the employer of a lawful, bargained-for provision of the settlement.

## BACKGROUND

Norma Sepulveda applied for compensation benefits, and although her employer (through its adjuster) contested all issues, it provided her with medical treatment and certain periodic benefits, pending resolution of her claims.

At a settlement conference in October 2001, the employer offered to settle the case for a payment of $20,000, less certain amounts, including permanent disability advances (PDA's) then totaling $2,442.87. Sepulveda rejected this offer.

At a settlement conference on April 25, 2002, the parties settled, with the WCJ's approval. The parties signed a form prepared by the Board, known as

a "Compromise and Release." (2 Cal. Workers' Comp. Practice (Cont.Ed.Bar 4th ed. 2002) § 16.22, pp. 1072–1073.) In this case it provides for "payment of the sum of $24,000.00 in addition to any sums heretofore paid by the employer or the insurer to the employee, less amounts set forth in Paragraph No. 6." Paragraph 6 recites "PERMANENT DISABILITY INDEMNITY" of $2,442.87 will be deducted, "**LEAVING A BALANCE** of $21,557.13, less approved attorney fee . . . ." After that is a handwritten sentence: "Less credit for further PDA subject to proof." The form from the October settlement conference was used, and the figure $20,000 was increased by writing a "4" over the first zero. The PDA figure was not changed.

On May 13, 2002, Sepulveda objected because the employer sent her a check for $14,630.85, but she expected a PDA deduction of no more than "$2442.00."

On May 15, 2002, defense counsel wrote back, stating "between the time that we originally contemplated the Compromise and Release [in October] and the time that you actually signed . . . my Client continued to pay you permanent disability advances in the form of bi-weekly checks." Referencing an attached accounting, he wrote "the amount of money you received . . . represented $24,000, less $2,880 to be held as attorney's fees, and less . . . permanent disability advances" of $6,362.87. To correct a clerical error, as shown by the accounting, Sepulveda was sent another $126.28.

On May 20, 2002, Sepulveda filed an application for penalties and interest, claiming she had not been paid according to the terms of the compromise. On the same day, she petitioned to reopen the case, claiming she had entered into the compromise under duress, believing she would receive $18,678, but she only received $14,630.85, followed by the additional $126.28.

At a hearing on September 16, 2002, before the same WCJ, the employer sought credit of $6,362.87 for permanent disability advances, and Sepulveda did not dispute this amount. Sepulveda testified she felt under duress to agree to the compromise. She also testified she had received permanent disability advances from August 2001 to April 2002, but she had not understood the different types of aid she was receiving.

The WCJ found no good cause to set aside the compromise, but also found the employer was only entitled to PDA credits of $2,442.87.

The employer filed a motion for reconsideration, which functions like an appeal to the Board. (See *County of Sacramento v. Workers' Comp. Appeals Bd.* (2000) 77 Cal.App.4th 1114, 1117 [92 Cal.Rptr.2d 290] (*County of Sacramento*).)

The WCJ filed a report on reconsideration, explaining his reasoning, and in denying reconsideration the Board adopted that reasoning. We quote in part: "This issue appears to arise from the fact that Defendant apparently drafted the C&R [compromise and release] in October 2001, at that time listed the figure of $2,442.87 as PDA's, and then failed to amend the C&R document when it was presented to the Applicant on 4/25/02 to reflect the fact that additional advances had been made . . . . Defendant contends that the language 'less credit for further PDA subject to proof' means that [its] failure to present an accurate PDA figure to Applicant on the date the settlement was entered into is 'excused' by such language. This position is not reasonable." The opinion views the term "further" to be ambiguous and goes on to characterize this as a case of clumsy drafting, and faults the employer for not having the accurate PDA figures at the settlement.

## DISCUSSION

■ As in ordinary civil appeals arising from trial courts, factual determinations by the Board are binding when supported by substantial evidence. (*LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) The historic facts of this case are not disputed.

■ We have acknowledged that compensation cases are adjudicated in a highly flexible procedural arena. (*County of Sacramento, supra*, 77 Cal.App.4th at p. 1116; see Lab. Code, § 5708.) But the Board must apply correct legal principles. (See *Gee v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1418, 1424, 1426 [118 Cal.Rptr.2d 105].) The meaning of a contractual release is a legal question, not a factual question, and the meaning is resolved by application of contract principles. (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 [114 Cal.Rptr.2d 265] (*Solis*).)

■ The language of a contract governs its interpretation, if the language is clear. (Civ. Code, § 1638.) "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (*Id.*, § 1636; see 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 684, p. 617.)

In this case, the compromise addressed the PDA's in two ways. First, a specific amount was listed in a box provided for that purpose in paragraph 6. Second, the handwritten notation indicating the possibility of further advances, *and giving the employer credit therefor*, was added to the end of paragraph 6. The facial meaning of the language was to give credit for "further" PDA's, beyond the amount stated, if the employer proved such had been paid.

The Board concluded the term "further" in the sentence "Less credit for further PDA subject to proof," was ambiguous and had no effect. In the Board's view, the defense counsel should have had the complete figures available and not tried to fix the outdated compromise form. The effect of the Board's ruling is to nullify the allegedly ambiguous sentence completely, depriving the employer of a bargained-for term. But, "An interpretation which gives effect is preferred to one which makes void." (Civ. Code, § 3541.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (*Id.*, § 1641.)

■ The Board points out that a new regulation, effective January 1, 2003, requires in part that "[a] defendant who has paid benefits shall have a current computer printout of benefits paid available for inspection at every mandatory settlement conference." (Cal. Code Regs., tit. 8, § 10607.) Apart from the fact that this later-adopted regulation does not apply in this case, it would not change the result because it does not state that the failure to comply has the effect of precluding credits for PDA's. Undergirding the Board's opinion is the fact that Sepulveda had no counsel at the time she accepted the settlement, although she had had two attorneys before, and one of her prior counsel continued to help her after she discharged him. But a party who chooses to represent himself is not entitled to special treatment. (See *Doran v. Dreyer* (1956) 143 Cal.App.2d 289, 290 [299 P.2d 661].) The WCJ rejected Sepulveda's claim of duress and the notion that a slick defense lawyer pulled the wool over an unrepresented worker's eyes lacks factual support. Sepulveda should have known what money she had received just as well as defense counsel should have known what money had been paid. She was aware of the offer as it existed the preceding October and should have known she had received further PDA's. Because defense counsel did not have the current figure at the hearing is not a reason to ignore a provision of the compromise.

■ The Board does not explain what else the critical sentence could mean. Language conveys meaning through application, not in the abstract. (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246]; see *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264–1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Foremost Insurance Co. v. Eanes* (1982) 134 Cal.App.3d 566, 571 [184 Cal.Rptr. 635].) "An ambiguity arises when language may be applied in more than one way. To say that language is ambiguous is to say there is more than one semantically permissible candidate for application, though it cannot be determined from the language which is meant. Every substantial claim of ambiguity must tender a candidate reading of the language which is of aid to the claimant. One must ask what meanings are proffered and examine their plausibility in light of the language. A party

attacking a meaning succeeds only if the attacker can propose an alternative, plausible, candidate of meaning." (*Estate of Dye* (2001) 92 Cal.App.4th 966, 976 [112 Cal.Rptr.2d 362]; see *Solis, supra*, 94 Cal.App.4th at p. 360.) Here, there is *no* alternative candidate of meaning tendered by the Board, thus there is no ambiguity.

■ The Board asserts that the worker should receive the benefit of any uncertainty in the language because it was the insurance defense attorney who offered the settlement form to her. (Civ. Code, § 1654.) However, a contract is not automatically construed against a drafter where, as here, the contract is the result of negotiations. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 823 [274 Cal.Rptr. 820, 799 P.2d 1253]; *Dunne & Gaston v. Keltner* (1975) 50 Cal.App.3d 560, 563, fn. 3 [123 Cal.Rptr. 430].) More importantly, as stated, the Board does not identify an ambiguity to be interpreted, the Board simply wants to nullify the employer's entitlement to future PDA's.

The Board faulted defense counsel for not doing the math, and states "the party seeking to assert credit should endeavor to use as specific language as possible, for example, 'credit for all permanent disability advances made through the approval date of this agreement.' " We agree the parties could have chosen other language, but we do not agree that the language used was unclear. Nor is it correct to conclude that the bargain would be illusory absent a solid PDA figure. The figure was readily ascertainable; indeed the Board itself refers to it as an "exceedingly simple math" problem. The bargain was not illusory because one term had to be calculated.

Finally, the employer points to two decisions published in the California Compensation Cases reporter (Cal.Comp.Cases). *Vons Companies, Inc. v. WCAB* (1998) 63 Cal.Comp.Cases 276 (*Vons*) is a Court of Appeal opinion not published in the California Official Reports. *Escamilla v. WCAB* (1995) 60 Cal.Comp.Cases 45 (*Escamilla*) is an unofficial summary of a Board decision, with a notation stating a writ of review had been denied by the Court of Appeal. The Board argues that the *Vons* decision is not citable. We agree.

■ Decisions in California Compensation Cases are commonly cited in compensation cases, where that reporter is considered "a basic research tool." (2 Cal. Workers' Compensation Practice, *supra*, § 22.48, p. 1368; see Jessen, Cal. Style Manual (4th ed. 2000) § 1.22[B], p. 23.) Many of these decisions summarize the Board's holding, stating that a writ to the Court of Appeal was denied, and may be cited to show the administrative interpretation of the Board. (*Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 827, fn. 7 [45 Cal.Rptr.2d 197]; see 2 Cal. Workers'

Compensation Practice, *supra*, § 21.32, p. 1292.) However, some unpublished Court of Appeal cases are also published in Cal.Comp.Cases. These cannot reflect an administrative interpretation because they are not Board decisions. We agree that such decisions, like other unpublished appellate decisions, are not citable. (Cal. Rules of Court, rule 977; see 2 Cal. Workers' Comp. Practice, *supra*, § 21.32, p. 1292.) We will not discuss the *Vons* case.

In *Escamilla, supra*, 60 Cal.Comp.Cases 45, the parties struck out the language " 'less credit for permanent disability advances,' " from the compromise form but the order approving the compromise mistakenly reinserted that language. The employer paid the applicant the agreed amount, less the advances, and the applicant petitioned for penalties and interest, and much later sought to amend the order to conform to the compromise. (*Id.* at pp. 46–47.) The Board ruled against the applicant, because he had delayed seeking relief. (*Id.* at p. 47.) The *Escamilla* decision shows the *norm* is to give the employer full credit for PDA's. That is consistent with our conclusion, above. Beyond that, the decision is of little utility.

█ The Board offers no alternate semantically permissible construction of the phrase "Less credit for further PDA subject to proof." We conclude it carries the meaning ascribed to it by the employer, and that the Board erred as a matter of law by denying the employer credits it had bargained for in the compromise with Sepulveda.

## DISPOSITION

The WCAB decision is annulled and the cause is remanded for proceedings consistent with this opinion. County of San Joaquin shall recover costs on this appeal.

Sims, Acting P. J., and Hull, J., concurred.