Filed 3/13/14  Granite Construction v. Bond Safeguard Ins. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GRANITE CONSTRUCTION COMPANY, | |
| Plaintiff and Respondent, | C066759 |
| v. | (Super. Ct. No. 07AS01347) |
| BOND SAFEGUARD INSURANCE COMPANY, | |
| Defendant and Appellant. | |

Sycamore Ventures, LLC (Sycamore) agreed to install public improvements at a subdivision and agreed to furnish a labor and material bond for the benefit of contractors on the project.  Bond Safeguard Insurance Company (BSIC) issued the labor and material bond.

When Sycamore failed to pay contractor Granite Construction Company (Granite), Granite recorded a mechanic's lien, sued Sycamore, and recorded a notice of lis pendens.  Eventually, Granite and Sycamore entered into a conditional settlement agreement and

1

release (settlement agreement), and obtained a stay of the lawsuit. BSIC was not involved in the settlement agreement. But when Sycamore failed to fully pay Granite pursuant to the settlement agreement, Granite and Sycamore stipulated that Granite would amend its complaint to add BSIC as a defendant.

Granite moved for summary adjudication and BSIC moved for summary judgment. The trial court granted Granite's motion and denied BSIC's motion. The trial court rejected BSIC's argument that the settlement agreement between Sycamore and Granite exonerated BSIC, and it further held that former Civil Code section 3225[1] precluded BSIC's exoneration. The trial court awarded Granite damages, prejudgment interest, costs and attorney's fees.

BSIC now contends (1) the bond is exonerated because the settlement agreement altered the construction contract between Sycamore and Granite; (2) the bond is exonerated because Sycamore fully performed under the construction contract when it settled with Granite; (3) BSIC cannot be liable because Sycamore's liability ceased upon settlement; (4) Granite is not entitled to an award of attorney's fees in excess of the bond amount; and (5) prejudgment interest against BSIC should commence on entry of judgment against Sycamore.

We conclude that only BSIC's contention regarding attorney's fees has merit. We will reverse the portion of the judgment awarding Granite attorney's fees and otherwise affirm the judgment.

BACKGROUND

Sycamore entered into a subdivision improvement agreement with the County of Sacramento (the County) regarding development of the Sycamore Grove Estates

---

[1] Former Civil Code section 3225 provided that any change in a contract relating to a work of improvement does not exonerate or release the surety. Undesignated statutory references are to the Civil Code.

2

subdivision.  The agreement obligated Sycamore to install public improvements at the subdivision.  The agreement also required Sycamore to furnish a performance bond for the benefit of the County and a labor and material bond for the benefit of contractors who furnished labor or materials to the subdivision project.

BSIC issued a labor and material bond to Sycamore, as bond principal, in connection with the project.  The bond provided that BSIC would pay all contractors for labor or materials furnished to the Sycamore Grove Estates subdivision in a sum not exceeding $466,950.

Sycamore thereafter entered into a written construction contract with Granite to complete specified public improvements at the subdivision.  Granite claimed it furnished materials and labor pursuant to the construction contract, but that Sycamore failed to pay Granite over $1 million due under the contract.  Granite recorded a mechanic's lien against the subdivision, sued Sycamore to recover the money Sycamore allegedly owed, and recorded a notice of lis pendens against the property.

Granite and Sycamore then entered into a conditional settlement agreement which included a release.  They also obtained a stay of Granite's lawsuit against Sycamore.  BSIC was not involved in the negotiation of the settlement agreement and did not consent to the settlement agreement.

The settlement agreement required Sycamore to pay Granite, within six months, the entire sum Granite alleged was owed, plus interest, attorney's fees, and costs.  Sycamore signed a stipulation for entry of judgment against it.  The settlement agreement further provided that in the event Sycamore failed to perform under the settlement agreement and then failed to cure any default within five days after Granite provided a written notice of default, Granite would file the stipulation for entry of judgment.  Granite and Sycamore also agreed that the trial court would retain jurisdiction over the matter in order to enforce the terms of the settlement agreement.

3

Sycamore did not make all payments due under the settlement agreement. It still owed Granite over $1 million. Following Sycamore's default under the settlement agreement, Granite and Sycamore stipulated that Granite would amend its complaint to add BSIC as a defendant. Sycamore also stipulated that it was liable to Granite on the causes of action alleged in the amended complaint and Granite may obtain judgment against Sycamore on those causes of action.

Before it filed its amended complaint, Granite notified the County and BSIC in writing that Granite had a claim in the sum of $1,112,249.76 against the labor and material bond that BSIC issued in connection with the Sycamore Grove Estates project. BSIC received notice of Granite's claim.

Granite then filed an amended complaint naming BSIC as a defendant. The amended complaint alleged causes of action for foreclosure of mechanic's lien, breach of contract, and quantum meruit against Sycamore and enforcement of the labor and material bond against BSIC.

Granite moved for summary adjudication on its action on the bond. It asserted that it was entitled to summary adjudication because (1) the labor and material bond obligated BSIC to pay Granite upon Sycamore's default on the construction contract, (2) the settlement agreement did not release Granite's claims against Sycamore because Sycamore did not pay Granite in full, and (3) BSIC's obligation under the labor and material bond was not exonerated.

BSIC moved for summary judgment. BSIC argued that (1) Granite and Sycamore materially altered the terms of Sycamore's obligation under the construction contract without BSIC's consent when they entered into the settlement agreement, thereby exonerating BSIC, (2) BSIC was exonerated because Granite released Sycamore from its obligations under the construction contract, (3) any liability by BSIC under the bond ceased to exist when Granite and Sycamore entered into the settlement agreement, and (4) Granite's failure to notify BSIC of the settlement agreement invalidated the bond.

4

The trial court granted Granite's summary adjudication motion and denied BSIC's summary judgment motion. The trial court rejected BSIC's contention that BSIC was exonerated when Granite entered into the settlement agreement with Sycamore. The trial court found *R.P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146 (*R.P. Richards*), a case BSIC relied on, inapposite because unlike the plaintiff in *R.P. Richards*, Granite did not sue for breach of the settlement agreement, did not obtain judgment for any such breach, and did not release any of its claims against Sycamore. The trial court also determined that former section 3225 precluded exoneration.

The trial court entered judgment in favor of Granite and against Sycamore and BSIC. It awarded Granite $1,097,249.76 in damages, plus prejudgment interest, costs and attorney's fees. Regarding BSIC, the trial court awarded Granite damages in the full amount of the bond ($466,950) and, in addition to that sum, costs, prejudgment interest from the date Granite filed its complaint against BSIC, and $224,541.34 in attorney's fees.

STANDARD OF REVIEW

A party may move for summary adjudication as to one or more causes of action if the party contends the cause of action has no merit or that there is no affirmative defense. (Code Civ. Proc., § 437c, subd. (f)(1).) Once the moving party has met its initial burden, the burden shifts to the opposing party to show that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(1).) The opposing party must set forth the specific facts showing a triable issue of material fact, and may not merely rely on the allegations or denials in the pleadings. (*Ibid.*)

On review, we consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the trial court, and all inferences reasonably deducible from the evidence to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 464-465.)

5

We independently review an order granting summary adjudication. (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 998; *Hartline v. Kaiser Foundation Hospitals, supra,* 132 Cal.App.4th at p. 464.) The trial court's stated reasons do not bind us. (*Hartline v. Kaiser Foundation Hospitals, supra,* 132 Cal.App.4th at p. 465.) We will affirm the judgment if the trial court's ruling is correct on any legal theory. (*Ibid.*)

DISCUSSION

I

BSIC contends the bond is exonerated because the settlement altered the construction contract between Sycamore and Granite. Specifically, BSIC argues (A) the settlement agreement between Granite and Sycamore impaired Granite's remedies or rights against Sycamore, thus exonerating BSIC's obligation under the labor and material bond, (B) Granite is judicially estopped from denying that it released its claims against Sycamore, and (C) contrary to the trial court's ruling, former section 3225 does not preclude exoneration. BSIC's arguments are based principally on *R.P. Richards, supra,* 83 Cal.App.4th 146.[2]

A

BSIC claims the settlement agreement between Granite and Sycamore impaired Granite's remedies or rights against Sycamore, thus exonerating BSIC's obligation under the labor and material bond.

" 'A surety is "one who promises to answer for the debt, default, or miscarriage of another . . . ." A surety bond is a " 'written instrument executed by the principal and surety in which the surety agrees to answer for the debt, default, or miscarriage of the principal.' " [Citation.] In suretyship, the risk of loss remains with the principal, while

---

[2] We previously denied Granite's request that we take judicial notice of certain documents filed in the trial court in *R.P. Richards, Inc. v. Chartered Construction Corp. et al.,* Santa Barbara Superior Court Case No. BC117563.

6

the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults.  [Citation.]  In the absence of default, the surety has no obligation.  [Citation.]' " (*Nissho of California, Inc. v. Bond Safeguard Ins. Co.* (2013) 220 Cal.App.4th 974, 983 (*Nissho of California*).)  Under section 2819, a surety's obligation to answer for the debt or default of the bond principal "is exonerated, except so far as [the surety] may be indemnified by the principal, if by any act of the creditor, without the consent of the surety . . . the remedies or rights of the creditor against the principal, in respect thereto, [are] in any way impaired or suspended."  The rationale behind exoneration is that the surety is subrogated to all of the creditor's rights against the principal, and the creditor cannot impair the surety's remedies against the principal. (*Bennett v. Leatherby* (1992) 3 Cal.App.4th 449, 452 (*Bennett*).)  In addition, the surety " ' "is entitled to stand on the strict letter of the contract upon which he is liable and . . . any change therein made without his consent, by which the contract is altered so as to impair or suspend the right of the creditor to proceed to enforce payment, fully releases the surety. . . ." ' " irrespective of whether the alteration injures the surety.  (*ITT Diversified Credit Corp. v. Highlands Ins. Co.* (1987) 191 Cal.App.3d 301, 306.)

The rule of exoneration in section 2819 is illustrated in *R.P. Richards, supra,* 83 Cal.App.4th 146.  In that case, a subcontractor sued a general contractor and its surety for the amount allegedly due the subcontractor for the work it furnished on a public works project.  (*Id.* at p. 151.)  The subcontractor and the general contractor thereafter entered into a settlement agreement which called for the payment to the subcontractor of a lesser sum than what was allegedly owed for its work.  (*Ibid.*)  The settlement agreement included a release of all mutual claims.  (*Ibid.*)  The settling parties asked the trial court to retain jurisdiction over the action until the settlement agreement was fully performed. (*Id.* at p. 152.)  The surety was not a party to the settlement agreement and did not consent to it.  (*Ibid.*)

7

When the general contractor failed to make all payments due under the settlement agreement, the subcontractor resumed prosecution of its lawsuit against the general contractor and its surety. (*R.P. Richards, supra,* 83 Cal.App.4th at p. 152.) But the subcontractor later moved for entry of judgment against the general contractor under the settlement agreement (instead of prosecuting the underlying claims to judgment), and the trial court entered judgment against the general contractor. (*Ibid.*)

The subcontractor's claim against the surety proceeded. (*R.P. Richards, supra,* 83 Cal.App.4th at p. 152.) The surety argued that the settlement agreement extinguished its obligation under the bond. (*Id.* at p. 153.) The trial court agreed. (*Ibid.*)

The issue on appeal was whether, under those facts, the surety remained liable under the bond. (*R.P. Richards, supra,* 83 Cal.App.4th at pp. 150-151.) The appellate court held that the release of all of the subcontractor's claims against the general contractor exonerated the surety. (*Id.* at pp. 154-155.) It said the release extinguished the principal bonded obligation, replaced the same with an unbonded obligation under the settlement agreement, and thereby impaired the subcontractor's rights and remedies against the general contractor within the meaning of section 2819. (*Ibid.*) The holding in *R.P. Richards* was based on the release by the subcontractor (creditor) of its claims against the general contractor (principal). (*Ibid.*)

*R.P. Richards* followed the holding of another Second District Court of Appeal decision, *Bennett, supra,* 3 Cal.App.4th 449. (*R.P. Richards, supra,* 83 Cal.App.4th at p. 155.) In *Bennett*, a lessor reached a settlement agreement with a sublessee regarding the lessor's claim for unpaid lease payments, and released the sublessee from all claims relating to the lease and the sublease. (*Bennett, supra,* 3 Cal.App.4th at p. 451.) The lessor then sued the parties who guaranteed the sublessee's performance under the sublease. The guarantors of the sublease did not consent to the settlement between the lessor and the sublessee. (*Ibid.*) Applying section 2819, the appellate court held that the release of claims against the sublessee exonerated the guaranty. (*Id.* at p. 453.) The

8

Court of Appeal explained that the sublessee, with the lessor's consent, assumed all of the obligations of the prime lease. (*Id.* at p. 452.) The assumption of the lessee's duties under the prime lease agreement made the sublessee a "principal" debtor of the "original obligation" within the meaning of section 2819. (*Ibid.*) Accordingly, the sublessee was responsible for the unpaid lease payments. (*Ibid.*) When the lessor settled with the sublessee and gave the sublessee a general, all-encompassing release, the lessor impaired its future rights against the sublessee. (*Id.* at p. 453.) As guarantors, the lessees would succeed to the lessor's rights against the sublessee under the principles of subrogation. But because the lessor released its rights against the sublessee, the lessees had no rights or remedies against the sublessee. In such circumstance, the guaranty was exonerated. (*Ibid.*)

*R.P. Richards* and *Bennett* require reversal of the trial court's summary adjudication order if Granite released its claims in connection with the Sycamore Grove Estates project in Sycamore's favor. As we shall explain, however, the release of claims by Granite never took effect.

A release is a contract. (*Matthews v. A.T. & S.F. Ry.* (1942) 54 Cal.App.2d 549, 557.) The interpretation of a release is governed by the same principles applicable to any other contract. (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) Our goal in interpreting the language of a release is to effectuate the parties' intent. (§ 1636; *Winet v. Price, supra*, 4 Cal.App.4th at pp. 1166, 1172.) Such intent is to be determined from the words of the contract only, unless the language of the contract is ambiguous. (§§ 1638, 1639; *County of San Joaquin v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 1180, 1184; *General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 440-441.) We read a release agreement in context and as a whole, giving effect to every part. (§ 1641; *County of San Joaquin v. Workers' Comp. Appeals Bd.*, *supra*, 117 Cal.App.4th at p. 1185.) We do not

9

rewrite terms of the parties' contract or ignore its express terms. (*Pitt v. Mallalieu* (1948) 85 Cal.App.2d 77, 81.)

When there is no conflicting competent extrinsic evidence as to the parties' intent, the interpretation of a release is a question of law which we determine de novo. (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1159; *Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 754.) Whether a release is ambiguous is also subject to our independent review. (*Paralift, Inc. v. Superior Court, supra*, at pp. 754-755.)

Paragraph G of the settlement agreement between Granite and Sycamore is entitled "Dismissal and Release." It stated that upon Sycamore's full and final payment to Granite of all sums due under the settlement agreement, Granite and Sycamore will file a joint request for dismissal with prejudice of Granite's complaint against Sycamore. Granite and Sycamore agreed that "upon the filing of the joint dismissal the Litigation shall be dismissed with prejudice by the Parties, and that the mutual release as set forth in Section 2 of this [settlement agreement] shall then take effect."

Section 2 of the settlement agreement, entitled "Mutual Release of Claims," stated: "Effective upon the fulfillment of all of the conditions stated in Section 1 above, the Parties on behalf of themselves and their officers, agents, servants, employees, representatives, directors, sureties, attorneys, predecessors, successors and assigns, hereby fully release and discharge each other, their parents, affiliates, subsidiaries and all officers, agents, servants, employees, representatives, stockholders, sureties, attorneys, predecessors, successors, and assigns, from and against any and all claims, cross-claims, demands, actions, causes of action, obligations, costs, fees, expenses, damages, interest, losses and liabilities, of any kind or nature, existing, claimed to exist or which can hereafter ever arise out of or result from or in connection with any act, error or omission which has occurred with respect to the Dispute, including, but not limited to, those actions and causes of action which are, may be, or could have been asserted in the

10

Litigation. This release extends to and includes any contractor's license bond issued by any surety for Granite." Section 1 set forth the amounts and schedule of payments due from Sycamore to Granite.

The words of the settlement agreement clearly show the parties' intent that the release by Granite was conditioned on Sycamore's full payment to Granite of the sums set forth in section 1 of the settlement agreement and the filing of a joint dismissal with prejudice of Granite's complaint against Sycamore. A release that is subject to the occurrence of a condition precedent is not effective until the happening of the specified condition. (*Johnson v. Pickwick Stages System* (1930) 108 Cal.App. 279, 284; Rest.2d Contracts, § 284, p. 392.) Sycamore did not fully perform its obligations under the settlement agreement. Consequently, the release of Granite's claims against Sycamore did not take effect. Inasmuch as Granite did not release any of its claims against Sycamore, Granite did not impair its rights or remedies against Sycamore or extinguish its bonded claim against Sycamore.[3] *R.P. Richards* is inapposite and section 2819 did not exonerate BSIC.

BSIC also argues that Granite's sole remedy was to enforce the settlement agreement. But BSIC does not show why Granite could not prosecute its claim for damages under the construction contract given that it did not release its claims against Sycamore.

BSIC also asserts that the filing of the stipulation for judgment described in section F of the settlement agreement would remove "any conditional nature of the

---

[3] BSIC contends, in its reply brief, that the release was not conditional "because there was nothing uncertain in the Settlement Agreement." BSIC's reply brief also states that the release was valid because it was supported by "good consideration." BSIC provides no explanation for its failure to raise these points in its opening brief. We will not consider arguments raised for the first time in a reply brief without a showing of good cause. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Granite Construction Co. v. American Motorists Ins. Co.* (1994) 29 Cal.App.4th 658, 667, fn. 8.)

11

Settlement Agreement." This assertion is not supported by a record citation showing that Granite's right to obtain a stipulated judgment against Sycamore excused the express conditions precedent for the release set forth in section 2 of the settlement agreement. We have not identified such a provision in the settlement agreement. Claims not supported by citation to the record are forfeited. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656.)

Again citing *R.P. Richards,* BSIC claims the conditional language in section 2 of the settlement agreement did not preclude the application of section 2819. When the trial court in *R.P. Richards* ruled on the surety's motion for summary judgment, it concluded that the surety was not exonerated because the release in that case was conditioned on full payment of the settlement amount, and such payment had not occurred. (*R.P. Richards, supra,* 83 Cal.App.4th at p. 152.) But the appellate court subsequently found, in relation to a different motion, that the subcontractor "fully released" the general contractor from claims for payment under the bonded obligation. (*Id.* at p. 155.) The appellate court did not set forth the language of the release or explain why it found a release of claims after the trial court found otherwise in ruling on an earlier and different motion. Nonetheless, as we have explained, we cannot conclude that Granite released its claims against Sycamore because the conditions precedent for such release, as expressed in the parties' settlement agreement, never occurred.

The cases BSIC discusses in its reply brief -- *Faye v. Feldman* (1954) 128 Cal.App.2d 319 (*Faye*), *Hofland v. Gustafson* (1955) 132 Cal.App.2d Supp. 907 (*Hofland*) and *Stevens v. Stevens* (1968) 268 Cal.App.2d 426 (*Stevens*) -- do not require a different result. Although the release in *Faye* was given full effect, it did not contain a condition precedent, unlike the release here. (*Faye, supra,* 128 Cal.App.2d at p. 327.) And although the Court of Appeal in *Hofland* held that the release was effective when the plaintiff signed it (*Hofland, supra*, 132 Cal.App.2d at p. Supp. 909), the court also held

12

that the eight-day delay in receiving the settlement payment in that case did not amount to a material failure of consideration justifying rescission. (*Id.* at pp. Supp. 908-909.) In other words, unlike here, the settlement payment was made in *Hofland.*

In *Stevens,* an ex-wife argued that a divorce judgment incorporating a property settlement agreement should be treated as a contract, and the judgment should be vacated because her former husband failed to fully perform under the property settlement agreement. (*Stevens, supra*, 268 Cal.App.2d at p. 435) The appellate court rejected the ex-wife's argument, concluding that although a consent judgment is construed as a contract, it may be vacated only on grounds applicable to all other judgments. (*Ibid.*) *Stevens* is inapposite and does not support BSIC's position.

B

BSIC next claims Granite is judicially estopped from denying that it released its claims against Sycamore. There is no evidence that Granite took one position on this subject in the trial court but now takes a different position in this appeal. But in any event, BSIC did not raise this claim in the trial court, and hence it cannot be advanced on appeal. (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 384, fn. 6; *Ochoa v. Pacific Gas & Electric Co*. (1998) 61 Cal.App.4th 1480, 1488, fn. 3.)

C

BSIC further contends that contrary to the trial court's ruling, former section 3225 did not preclude exoneration.[4] BSIC argues that (1) former section 3225 did not apply

---

[4] Former section 3225 provided, in pertinent part: "The surety or sureties on any bond given pursuant to any of the provisions of this title [Title 15 of the Civil Code] shall not be exonerated or released from the obligation of the bond by any change, alteration, or modification in or of any contract, plans, specifications, or agreement pertaining or relating to any scheme or work of improvement or pertaining or relating to the furnishing of labor, materials, or equipment therefor, nor by any change or modification of any terms of payment or extension of the time for any payment pertaining or relating to any scheme or work of improvement . . . ." (Stats. 1969, ch. 1362, § 2, p. 2776.) Former

13

because BSIC did not issue its bond pursuant to Title 15 of the Civil Code, and

(2) *R.P Richards, supra,* 83 Cal.App.4th at page 156 requires us to conclude that former section 3225 did not apply because Granite released the original obligation.

Section 2819 exonerates the surety when an act of the creditor, without consent of the surety, materially alters the original obligation of the principal. (§ 2819; *ITT Diversified Credit Corp. v. Highlands Ins. Co., supra,* 191 Cal.App.3d at pp. 306, 310; *Verdugo Highlands, Inc. v. Security Ins. Co.* (1966) 240 Cal.App.2d 527, 530.) Former section 3225 was an exception to the general rule set forth in section 2819, applicable to bonds furnished to protect contractors, laborers and material suppliers. (*R.P. Richards*, *supra*, 83 Cal.App.4th at p. 156; Cal. Mechanics' Liens and Related Construction Remedies (Cont.Ed.Bar 3d ed. 2011) § 10.12, pp. 666-667 [former section 3225 applied to payment bonds given on public works and private works].)

We interpret BSIC's labor and material bond de novo to determine whether it was "given pursuant to" Government Code section 66499 et seq. and not Title 15 of the Civil Code, as BSIC claims, because the record contains no extrinsic evidence of the parties' intent in issuing the bond. (*U.S. Leasing Corp. v. duPont* (1968) 69 Cal.2d 275, 284.) We construe the language of the bond using the same rules applicable to other contracts and endeavor to effectuate the purposes for which the bond was designed. (§§ 1636, 2837; *U.S. Leasing Corp. v. duPont*, *supra*, 69 Cal.2d at p. 284.) Where, as here, the bond incorporated another contract, we read the bond together with that contract and

---

section 3225 applied to bonds "given pursuant to" Title 15 of the Civil Code. Section 8152 now states, in relevant part, that "[a] change, alteration, or modification to a contract, plan, specification, or agreement for a work of improvement or for work provided for a work of improvement" or "a change or modification to the terms of payment or an extension of the time for payment for a work of improvement" does not release a surety from liability on a bond. (Stats. 2010, ch. 697, § 20 [operative July 1, 2012].)

construe them as a whole according to the intent of the parties. (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 39-40.)

BSIC's bond recited that under the terms of the subdivision improvement agreement between the County and Sycamore, Sycamore was required to file a payment bond to secure claims made under section 3082 et seq. (now found at section 8000 et seq.). Those statutes were part of Title 15 of the Civil Code and governed mechanics' liens, stop notices, and payment bonds on works of improvement. The subdivision improvement agreement, which was incorporated into the bond, referenced Government Code sections 66462, 66499 and 66499.3 and required Sycamore to provide a surety bond "securing payment to contractor [*sic*], his subcontractors, and to persons renting equipment or furnishing labor or material for the improvement."[5] The subdivision improvement agreement and the labor and material bond did not express the intent to preclude operation of Title 15 of the Civil Code. To the contrary, the bond stated that it shall inure to the benefit of any person, company or corporation entitled to file a claim under Title 15 of the Civil Code.

Taken together, the subdivision improvement agreement and BSIC's labor and material bond contemplated a "payment bond" for a "work of improvement" within the meaning of Title 15 of the Civil Code.[6] BSIC's bond relates to a work of improvement

---

[5] Government Code section 66462, subdivision (c) requires a security guaranteeing the subdivider's performance under a subdivision improvement agreement. Government Code sections 66499 and 66499.3 set forth the permissible types and the required amounts of the security mandated under Government Code section 66462.

[6] Former section 3096 defined a "payment bond" as "a bond with good and sufficient sureties that is conditioned for the payment in full of the claims of all claimants and that also by its terms is made to inure to the benefit of all claimants so as to give these persons a right of action to recover upon this bond in any suit brought to foreclose the liens provided for in this title [15 to the Civil Code] or in a separate suit brought on the bond." (Stats. 1969, ch. 1362, § 2, p. 2756.) Former section 3106 defined "work of

15

because the subdivision improvement agreement required Sycamore to complete public improvements required at the Sycamore Grove Estates subdivision, and the construction contract between Granite and Sycamore included grading work at the subdivision. BSIC's bond accomplished the purpose of a "payment bond" by guaranteeing the payment, up to the amount of the bond, of materials or labor provided by contractors, subcontractors, laborers, material suppliers, and other persons employed in the performance of the subdivision improvement agreement. (Stats. 1969, ch. 1362, § 2, p. 2756 [former section 3096]; see generally *Sukut-Coulson, Inc. v. Allied Canon Co.* (1978) 85 Cal.App.3d 648, 653.) BSIC's bond was "given pursuant to" Title 15 of the Civil Code, and thus was subject to former section 3225 because the bond was authorized by Title 15 of the Civil Code and the parties clearly intended the bond to secure payment to contractors employed on a work of improvement. (*Progress Glass Co. v. American Ins. Co.* (1980) 100 Cal.App.3d 720, 728 [payment bond was "given pursuant to" Title 15 of the Civil Code where the bond was authorized or permitted by that statute]; *Winick Corp. v. General Ins. Co.* (1986) 187 Cal.App.3d 142, 146-148 [bond that complied with statutory stop notice requirements was a statutory bond given pursuant to the stop notice statutes].) "It is not necessary that the bond contain a recital that it is given pursuant to a statute in order that it be determined to be a bond contemplated by the statute." (*Winick Corp. v. General Ins. Co.*, *supra*, at p. 147.) Moreover, courts have held that claims against labor and material bonds issued in relation to a subdivision improvement agreement are governed by Title 15 of the Civil Code. (*California Paving & Grading Co., Inc. v. Lincoln General Ins. Co.* (2012) 206 Cal.App.4th 36, 42-45; *Sukut-Coulson, Inc. v. Allied Canon Co.*, *supra*, 85 Cal.App.3d at p. 654.) *R&R Pipeline, Inc. v. Bond Safeguard Ins. Co.* (2014) 223 Cal.App.4th 438, a case BSIC brought to our attention

---

improvement" as including the grading of any tract of land. (Stats. 1969, ch. 1362, § 2, pp. 2760-2761.)

pursuant to rule 8.254 of the California Rules of Court, does not change our analysis. BSIC has not established that it issued its labor and material bond pursuant to the Government Code alone.

According to BSIC, *R.P. Richards* compels the conclusion that former section 3225 did not apply here. The appellate court in *R.P. Richards* held that former section 3225 did not apply when the creditor released the principal obligation. (*R.P. Richards, supra*, 83 Cal.App.4th at pp. 156-158.) As we have explained, however, Granite did not release its claims against Sycamore.

Any change in the terms of the construction contract or any change in the terms of payment or extension of the time for payment relating to Granite's work at the Sycamore Grove Estates project did not exonerate BSIC pursuant to former section 3225. (Stats. 1969, ch. 1362, § 2, p. 2776; 10 Miller & Starr, Cal. Real Estate (3d ed. 2012) § 28:103, pp. 28-328 to 28-329.) Because we conclude that BSIC's obligation to Granite was not extinguished, we need not consider BSIC's further contention that the labor and material bond did not waive the provisions of section 2819.

II

In another variation of the same argument, BSIC next contends the bond is exonerated because Sycamore fully performed under the construction contract when it settled with Granite. Specifically, it argues the bond was exonerated pursuant to section 2839.

Section 2839 provides that "[p]erformance of the principal obligation, or an offer of such performance, duly made as provided in this [Civil] code, exonerates a surety." For example, payment by the bond principal to the claimant exonerates the surety. (*Post Bros. Constr. Co. v. Yoder* (1977) 20 Cal.3d 1, 8.) Here, Granite did not receive full payment for the labor and materials it furnished. And Granite did not release Sycamore from its obligations under the construction contract. BSIC was not exonerated under section 2839.

17

BSIC further claims it cannot be liable because Sycamore's liability ceased upon settlement. BSIC argues the settlement agreement exonerated BSIC under section 2810 by releasing Sycamore's obligations under the construction contract.

A surety is not liable if, for a reason other than the "mere personal disability of the principal," the liability of the principal ceases, unless the surety has assumed liability with knowledge of the existence of the defense. (§ 2810.) The appellate court in *R.P. Richards* held that the creditor's release of all of its claims against the principal caused the principal's liability on the original obligation to cease, within the meaning of section 2810, thereby exonerating the surety. (*R.P. Richards, supra,* 83 Cal.App.4th at pp. 154-155.) As we have explained, however, there was no release of claims here which would cause Sycamore's liability under the construction contract to cease.

IV

In addition, BSIC asserts that Granite is not entitled to an award of attorney's fees in excess of the bond amount. It challenges the trial court's order awarding Granite attorney's fees which, together with the amount of damages awarded to Granite, exceeded the penal sum of BSIC's bond. BSIC argues that its obligation to pay attorney's fees in excess of the amount of its bond extended to the County only.

The language of the bond governs its interpretation, if the language is clear and explicit, and does not involve an absurdity. (§§ 1638, 2837.) The language of the bond with regard to BSIC's obligation to pay reasonable attorney's fees in excess of the penal sum of the bond is clear. The bond stated: "NOW, THEREFORE, said principal [Sycamore] and the undersigned as corporate surety [BSIC], are held firmly bound unto the county of Sacramento and all contractors, subcontractors, laborers, materialmen and other persons employed in the performance of the aforesaid agreement and referred to in the aforesaid Code of Civil Procedure, in the sum of . . . [$466,950.00], for materials furnished or labor thereon of any kind, or for amounts due under the Unemployment

18

Insurance Act with respect to such work or labor, that said surety will pay the same in an amount not exceeding the amount herein above set forth, and also in case suit is brought upon this bond, will pay, in addition to the face amount thereof, costs and reasonable expenses and fees, including reasonable attorney's fees, incurred by County in successfully enforcing such obligation, to be awarded and fixed by the court, and to be taxed as costs and to be included in the judgment therein rendered."[7]

The bond provides that in an action brought upon the bond, BSIC is obligated to pay, "in addition to the face amount" of the bond, reasonable attorney's fees, incurred by the County. Such is the extent of BSIC's liability for attorney's fees which are in excess of the penal sum of the bond. (*Nissho of California, supra,* 220 Cal.App.4th at p. 991 [noting that nearly identical attorney's fee provision in *Granite Construction Co. v. American Motorists Ins. Co., supra*, 29 Cal.App.4th 658 limited attorney fees to the municipality].) Although the bond inures to the benefit of contractors like Granite, and while BSIC is obligated to pay Granite's attorney's fees up to the face sum of its bond (*Lawrence Tractor Co. v. Carlisle Ins. Co.* (1988) 202 Cal.App.3d 949, 953-956 (*Lawrence Tractor Co.*)), the bond does not provide that BSIC shall pay, in addition to the face amount of the bond, the reasonable attorney's fees incurred by those who furnish materials or labor to the Sycamore Grove Estates project. We do not impose on the surety a burden that is not contained in or clearly inferable from the language of its contract. (*Nissho of California, supra,* 220 Cal.App.4th at p. 983.) The surety " ' "has

_____

[7] Granite submitted a "red-line version" of the bond to show how the language of BSIC's bond compares with the language in Government Code section 66499.2. Granite requests that we take judicial notice of the red-line document. We deny the request. Nevertheless, we note that the language of BSIC's bond is substantially similar to the form required in Government Code section 66499.2 for subdivision improvement labor and material bonds, although it is not verbatim. (Stats. 2001, ch. 176, § 37, pp. 1924-1925.)

consented to be bound only within the express terms of his contract and his liability must be found within that contract or not at all." ' " (*Ibid.*)

The language of the bond in *Granite Construction Co. v. American Motorists Ins. Co., supra*, 29 Cal.App.4th 658, is nearly identical to the one before us. However, the issue before the court in that case was whether the bond required the surety to pay for attorney's fees and costs incurred prior to the institution of the action on the bond, as opposed to those incurred in the course of the action on the bond. (*Id.* at pp. 662, 667-669.) The court did not discuss whether the attorney's fee provision in that case obligated the surety to pay those fees incurred by the sub-subcontractor (a point the surety did not dispute) or whether the surety was obligated to pay the attorney's fees incurred by the sub-subcontractor when those fees exceeded the face amount of the bond. (*Id.* at pp. 667-669.) Cases are not authority for propositions not considered. (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1398.)

Granite argues it is entitled to its attorney's fees under section 1717. Section 1717 makes reciprocal a provision awarding attorney's fees. Section 1717, subdivision (a) provides, in pertinent part, that in any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

When it is required to pay attorney's fees to a successful bond claimant pursuant to section 1717, the surety is not liable for attorney's fees in excess of the penal sum of its bond unless the contract specifically so obligates the surety. (*Lawrence Tractor Co., supra*, 202 Cal.App.3d at pp. 951, 956 [relying on *Hartford Acc. etc. Co. v. Indus. Acc. Com.* (1932) 216 Cal. 40]; see also *National Technical Systems v. Superior Court* (2002) 97 Cal.App.4th 415, 425-426; *T&R Painting Construction, Inc. v. St. Paul Fire & Marine*

20

*Ins. Co.* (1994) 23 Cal.App.4th 738, 746.) This is because attorney's fees are allowable only if specifically contracted for and the surety is not liable beyond the express limits of its undertaking. (*Lawrence Tractor Co., supra,* 202 Cal.App.3d at pp. 955-956.) BSIC is not liable to Granite for attorney's fees because the bond did not obligate BSIC to pay attorney's fees to Granite in excess of the face amount of the bond and the award of attorney's fees to Granite, together with the amount of damages awarded, exceeded the face amount of BSIC's bond. We will reverse the order granting Granite's motion for attorney's fees and the portion of the judgment awarding Granite attorney's fees.

V

BSIC contends the prejudgment interest against it should commence on entry of judgment against Sycamore.

The trial court awarded Granite prejudgment interest from August 4, 2008, the date Granite filed its amended complaint adding BSIC. BSIC claims that award was erroneous because prejudgment interest against it did not accrue until November 10, 2010, the date judgment was entered against Sycamore. BSIC contends the entry of judgment against Sycamore fixed Sycamore's liability to Granite and triggered BSIC's obligation to pay under the bond.

A surety may be liable for prejudgment interest even if the payment of interest causes the surety's total liability to exceed the amount of its bond. (*Burns v. Massachusetts etc. Ins. Co.* (1944) 62 Cal.App.2d 972, 975 (*Burns*).) When the payment of interest causes the surety's liability to exceed the face of the bond, interest accrues from the time payment from surety is due, as damages for the surety's own withholding rather than the principal's default. (*Id.* at pp. 975-976.) Payment from the surety is due upon the filing of the complaint against the surety when there is no dispute about the fact and amount of the principal's obligation to pay the bond claimant. (§ 3287; *Pellas v. Ocean Acc. & Guar. Corp.* (1938) 24 Cal.App.2d 528, 537; *Lasky v. American Indemnity Co.* (1929) 102 Cal.App. 192, 198-199.)

21

According to BSIC, *Burns*, *supra*, 62 Cal.App.2d 972 and *Schmitt v. Insurance Co. of North America* (1991) 230 Cal.App.3d 245 (*Schmitt*) support its assertion that prejudgment interest did not accrue from the date Granite filed its complaint against BSIC. In *Burns*, the plaintiff sued the surety which issued a faithful performance bond to her guardian after the probate court determined that the guardian misappropriated the plaintiff's money. (*Burns v. Massachusetts etc. Ins. Co*. (1944) 62 Cal.App.2d 962, 964 [companion case to *Burns, supra*, 62 Cal.App.2d 972]; *Burns, supra*, 62 Cal.App.2d at p. 974.) The guardian appealed the probate court's order finding misappropriation. (*Burns, supra*, 62 Cal.App.2d at p. 974.) While the guardian's appeal was still pending, the probate court awarded the plaintiff prejudgment interest as against the guardian, which together with the misappropriated sum, exceeded the amount of the guardian's bond. (*Ibid.*)

The issue before the appellate court was whether prejudgment interest accrued from the filing of the remittitur in the guardian's appeal of the order finding misappropriation or from an earlier date. (*Burns, supra*, 62 Cal.App.2d at p. 975.) The appellate court affirmed the judgment awarding interest from one day after the filing of the remittitur. (*Id.* at p. 978.) It explained: "The rule is well settled in this state that no action may be maintained against the surety until a final order has been made by the trial court fixing the obligation of the principal. If no such order has been made, or, if such order has been made but it is not final, any action against the surety is premature. [Citations.] These cases demonstrate that on July 1, 1937, when the probate court determined the amount of the debt owed by the guardian to the ward, and on January 27, 1939, when the probate court fixed the amount of interest that the guardian owed to the ward, the surety was not in default. The surety was not a party to these proceedings and had no control over them. As long as these orders were on appeal the surety had no way of knowing the amount of its obligation. It did not become liable to action until the remittitur was filed on April 3, 1940. That is when its liability was first fixed. That is

when it became in default.  Obviously, therefore, for interest in excess of the penalty of the bond, that is the earliest date that could be chosen." (*Burns, supra*, 62 Cal.App.2d at pp. 977-978.)

*Schmitt* involved a lawsuit for breach of the implied covenant of good faith and fair dealing that bond principals and claimants brought against the surety on a licensed motor vehicle dealer's bond.  (*Schmitt, supra*, 230 Cal.App.3d at pp. 247-248.)  The appellate court held that the surety's denial of liability under the bond was not evidence of bad faith where the principal's legal obligation to pay the claimants was not established at the time of the denial.  (*Id.* at pp. 258-259.)  The appellate court said the surety had no obligation to pay under the bond until the principal's liability to the bond claimants was fixed.  (*Id*. at p. 258.)  Under the facts of that case, the principal's obligation to pay the claimants was not fixed until the trial court entered default judgment against the principals because prior to that time, even the bond claimants did not believe the principals were personally liable to the claimants.  (*Ibid.*)

Here, the award of prejudgment interest from August 4, 2008, the date Granite filed its amended complaint adding BSIC, was consistent with *Burns* and *Schmitt* because the amount of the principal bonded obligation was fixed as of August 4, 2008.  In particular, Sycamore stipulated in October 2007 that it owed Granite a sum certain. (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 799 ["if the defendant admits to the amount of damages submitted by the plaintiff, the damages are held to be certain as to defendant for the purpose of section 3287, subdivision (a), and interest will be granted from the date of admission or stipulation" (italics omitted)].)  Such stipulation or admission was absent in *Burns* and *Schmitt*.  As of August 4, 2008, Granite had also submitted a claim to BSIC on the labor and material bond.

The amount of the principal obligation in *Burns* was not fixed until the guardian's appeal of the probate court's order that he had misappropriated over $13,000 of the

plaintiff's money was finally determined. (*Burns, supra*, 62 Cal.App.2d at pp. 974, 977.) Prior to that point, the bonding company had no way of knowing the existence or amount of its obligation. (*Id.* at p. 977.) Likewise, the amount of the principal obligation in *Schmitt* was not certain until a default judgment was entered against the bond principals. (*Schmitt, supra*, 230 Cal.App.3d at p. 258.) BSIC fails to demonstrate that reversal of the prejudgment interest order is required.

DISPOSITION

The order granting Granite's motion for attorney's fees and the portion of the judgment awarding Granite attorney's fees are reversed. The judgment is otherwise affirmed. Each party shall bear its own costs on appeal.

        MAURO        , J.

We concur:

        NICHOLSON        , Acting P. J.

        ROBIE        , J.